In re Howard C. and Verla B. GREEN, Debtors.

William A WEAR, Trustee, Plaintiff,

v.

Howard C. and Verla B. GREEN; Wachovia Bank and Trust, N.A.; Wal–Mart Stores, Inc.; and United Savings and Loan Association, Defendants.

Bankruptcy No. 89–60691–S–7–KMS. Adv. No. 89–6099–S.

United States Bankruptcy Court, W.D. Missouri.

June 14, 1990.

Gary T. Nelms, Springfield, Mo., for plaintiff.

Michael P. Donegan, Springfield, Mo., for debtors.

Gary A. Powell and Lee J. Viorel, Springfield, Mo., for Wal–Mart Stores, Inc. and Wachovia Bank & Trust, N.A.

Jack L. Miller, Lebanon, Mo., for United Sav. and Loan Ass'n.

## MEMORANDUM OPINION AND ORDER REQUIRING TURNOVER OF PROPERTY OF THE ESTATE AND DENYING EXEMPTIONS

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The adversary action before the Court is the Chapter 7 Trustee's Complaint for turnover and objection to exemptions. The Court has jurisdiction over this adversary action pursuant to 28 U.S.C. § 1334(b), and may enter final orders in this core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (b)(2)(E).

This action, related to the Chapter 7 case assigned to Division 1 of this Court, was transferred to Division 3 based upon Judge Karen M. See's recusal. The Trustee filed his complaint on November 14, 1989, and service of process and summons was completed against all of the above-named defendants. Trial of the matter was originally set for March 7, 1989; subsequent to the transfer to Division 3, trial was set in for March 23, 1990. Pursuant to agreement of all of the parties, the Stipulation of Facts was submitted to the Court on March 23, 1990. After duly considering the Stipulation of Facts, the documents incorporated therein, and the argument of counsel as presented in their written briefs, the Court finds in favor of plaintiff and directs defendants to turn over to plaintiff the value of certain assets held in a profit-sharing plan for the benefit of debtor Howard C. Green.

## FINDINGS OF FACT

Debtors filed their Chapter 7 bankruptcy petition on July 27, 1989. At the time of the filing of the petition, Howard C. Green was employed as a store manager by Defendant Wal–Mart Stores, Inc. ("Wal–Mart") in Marshfield, Missouri and had been employed by Wal–Mart for sixteen (16) years. Mr. Green is now employed by Wal–Mart as a store manager at a Wal–Mart discount retail store in Bedford, Virginia.

Mr. Green was born on November 7, 1941 and was 47 years of age at the time the bankruptcy petition was filed; Debtor Verla B. Green was born on September 4, 1925 and was 63 years of age at the time the bankruptcy petition was filed. Mr. Green has a life expectancy of 75.1 years, and Mrs. Green has a life expectancy of 82.6 years, according to the mortality table published in Am.Jur.2d, Desk Book (1989 Cum.Supp.), Item No. 159.

Both debtors state that they are in good health and neither has been hospitalized within the last two (2) years. Mrs. Green had surgery to repair a herniated disc in 1984. Prior to that she had been employed as a dog groomer, but is unable to engage in employment involved in heavy lifting since her back surgery. Immediately prior to the filing of the bankruptcy, Mrs. Green operated a ladies ready-to-wear apparel and accessories business known as "Mademoiselle of Marshfield". The business became insolvent and operations terminated on April 15, 1989.

Mr. Green anticipates that he will retire at age 65. He does not anticipate any substantial increase or decrease in his income prior to retirement. Debtors have no IRA or retirement accounts, except for the Wal–Mart Profit Sharing Plan described below. Debtors do not anticipate any substantial increase or decrease in their anticipated living expenses between now and retirement age, except for normal costs of living and possible future medical expenses in connection with Mrs. Green's back problems. Both debtors are covered under Wal–Mart's group medical and dental insurance plans.

Mr. Green earned $29,797.00 both in 1987 and in 1988. His total gross earnings from

employment in 1989 were $31,905.35. His present monthly gross income is $2,692.32, all earned from his employment at Wal-Mart. Mrs. Green is not currently employed and receives $343.00 per month in Social Security benefits. In addition, she earned $400.70 in wages in 1989. Debtors do not have any dependent children and are not providing financial support for any other person. The following is a list prepared by debtors' of their current claimed monthly income and living expenses:

INCOME

|  |  | Husband | Wife |
|---|---|---|---|
| Gross pay (monthly/salary) |  | $2,692.32 | $ 0.00 |
| Less: Federal Tax withholding | $353.80 |  |  |
| FICA | $201.30 |  |  |
| State Tax withholding | $120.36 |  |  |
| United Way | $ 2.00 |  |  |
|  | $677.46 |  |  |
| Life Ins. (Howard) | $ 2.76 |  |  |
| Dep. Life | $ 5.34 |  |  |
| Ins. Tax | $ 24.92 |  |  |
| Accidental Death | $ 4.16 |  |  |
|  | $ 37.18 |  |  |
| Medical coverage | $ 46.00 |  |  |
| Dental Coverage | $ 11.00 |  |  |
| Long Term Disability Insurance | $ 8.08 |  |  |
|  | $ 65.08 |  |  |
| Total Deductions | $779.72 |  |  |
| Net Pay |  | $1,912.60 | $ 0.00 |
| Other income: Social Security |  |  | $ 343.00 |
| Total Monthly Income |  | $1,912.60 | $ 343.00 |
| Total NET Income husband and wife |  |  | $2,255.60 |

EXPENSES

| | | | |
|---|---|---|---|
| Home expenses: |  |  |  |
| Rent of residence |  |  | $ 375.00 |
| Utilities: |  |  |  |
| Electricity |  | $ 264.00 |  |
| Water |  | $ 17.00 |  |
| Telephone |  | $ 35.00 |  |
| Other (sewer $21.00, Trash $6) |  | $ 27.00 |  |
| Total Utilities |  |  | $ 343.00 |
| Total, all home expenses |  |  | $ 718.00 |
| Other Expenses: |  |  |  |
| Auto (1983 Cadillac) |  |  |  |
| Loan Repayment (through June 1990) |  | $ 383.00 |  |
| Fuel |  | $ 200.00 |  |
| Maintenance & Repair* |  | $ 150.00 |  |
| Insurance |  | $ 60.00 |  |
| Food |  | $ 275.00 |  |
| Clothing |  | $ 62.00 |  |
| Laundry and Dry Cleaning |  | $ 35.00 |  |
| Medical, dental |  | $ 87.00 |  |
| Recreation and Entertainment Cable TV & Newspaper |  | $ 18.00 |  |
| Donations (Church) |  | $ 40.00 |  |
| Postage |  | $ 30.00 |  |
| Pet Food and Care |  | $ 24.00 |  |
| Total Other Expenses |  | $1,820.00 |  |
| Total Estimated current monthly expenses |  |  | $2,538.00 |

* debtors incurred $1,927.00 of repair expenses 9/11/89 to 2/8/90

Wal–Mart is a Delaware corporation, with its administrative office located in Bentonville, Arkansas. The stock of Wal–Mart is publicly held and is traded on the New York Stock Exchange. Wal–Mart, an accrual-basis taxpayer, reports its taxable income on the basis of a January 31 fiscal year. As of January 31, 1989, Wal–Mart operated 1,259 discount retail stores in 25 states, under the trade name "Wal–Mart Stores", and 105 additional stores in 21 states under the trade name "Sam's Whole-sale Clubs". As of January 31, 1989, Wal–Mart employed over 200,000 persons on either a full-time or part-time basis.

Wal–Mart established the Wal–Mart Stores, Inc. Profit Sharing Plan and the Wal–Mart Stores, Inc. Trust (hereinafter referred to as either "Plan", "Trust", or "Wal–Mart Profit Sharing Plan and Trust") on September 1, 1971. The Plan and Trust were amended and restated effective as of February 1, 1984. Amendments to the Plan and Trust were executed in 1985 and again in 1987. Both the Plan and Trust were again amended and restated effective January 31, 1988. A further amendment was executed in 1989.

Wal–Mart received its most recent favorable determination letter concerning the Plan and Trust on November 4, 1985. The Plan and Trust are apparently qualified under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and are subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan is administered by the Profit Sharing Department of Wal–Mart (the "Profit Sharing Department") at Wal–Mart's corporate office in Bentonville, Arkansas. The Board of Directors of Wal–Mart appoints an individual to serve as the Plan Administrator. Wal–Mart has also appointed a committee of employees as an Administrative Committee (the "Administrative Committee") to interpret and enforce the Plan.

Defendant Wachovia Bank and Trust Company, N.A. a national banking association of Winston–Salem, North Carolina, ('Wachovia") acts as trustee for the Plan.

The accounting period for the records of the Plan (the "Plan Year"), is the same as Wal–Mart's fiscal year. As of January 31, 1989, there were 124,780 participants in Wal–Mart Profit Sharing Plan and Trust. Plan assets, which include Wal–Mart common stock, totaled $649,000,000 as of January 31, 1989.

As stated in the introductory portion of the Plan and in Section V, Paragraph 5.1 of the Trust, the Wal–Mart Profit Sharing Plan and Trust is intended to be a profit sharing stock bonus plan, investing primarily in Wal–Mart stock to enable Wal–Mart employees to share in the equity ownership of Wal–Mart. The Plan is entirely funded by contributions from Wal–Mart. Annual contributions are made at the sole discretion of the Board of Directors of Wal–Mart. Contributions to the Plan are made in cash; however, the Board of Directors has the discretion to make contributions in the form of common stock of Wal–Mart if it wishes to do so. The annual contribution to the Plan is based on a formula as approved by the Executive Committee of the Board of Directors of Wal–Mart, and is a percentage of the annual eligible wages of the participants of the Plan, which percentage is based on the Wal–Mart's pretax profits. Except for certain "rollover accounts" from other plans or interests held by the participants, the Plan does not accept, nor require, any employee contributions. A separate account is maintained for each participant in the Plan for accounting purposes, but are not held as segregated funds.

Mr. Green is not an officer or director of Wal–Mart, does not serve on the Administrative Committee, and has never served in any of these capacities. He has participated in the Plan since 1978, and has been one hundred percent (100%) vested in his account balance since June, 1984. A participant's account is derived entirely from Wal–Mart's contributions. A participant's account balance in the Plan is valued quarter-annually. Mr. Green's account balance in the Plan had the following values as of the following valuation dates:

| Valuation Date | Account Balance |
|---|---|
| 01/31/89 | $ 94,521.56 |
| 04/30/89 | $ 99,458.35 |
| 07/31/89 | $115,576.09 |
| 10/31/89 | $112,945.92 |

The Plan and Trust are operated by the Administrative Committee and Wachovia in accordance with their terms. Approximately eighty percent (80%) of the Plan's assets consist of Wal–Mart common stock held in certificates issued in the name of Wachovia. No stock certificates are issued in the name of individual participants until such time as the participant is entitled to receive a distribution under the terms of the Plan. Distributions are made to participants in cash, Wal–Mart common stock, or a combination of the two.

The amount of any distribution to a participant under the Plan is dependent upon the value of the participant's account balance (including the value of common stock of Wal–Mart) at the time of distribution. The value of a participant's account balance in the Plan can increase or decrease from year to year depending upon the value of the Plan's assets, earnings on those assets, and contributions, if any, by Wal–Mart. Wal–Mart's contributions are allocated to participants' accounts at the end of each plan year.

Mr. Green is granted several powers and rights in the Wal–Mart Profit Sharing Plan and Trust. He is given the power to receive his interest upon termination of his employment. Upon notice, he also has the unrestricted right to vote the shares of Wal–Mart stock attributed to his account, and may also receive dividends from Wal–Mart stock. He also has the right to designate the beneficiary of certain benefits, and to elect the form of distributions from the profit sharing plan.

Defendant United Savings and Loan Association ("United Savings") is a Missouri state savings and loan association with its principal office located in Lebanon, Missouri. On or about January 18, 1988, debtors executed and delivered to United Savings for valuable consideration their promissory note in the principal amount of $30,000.00. The maturity on the January 18 Note was extended to April 10, 1989, by means of execution of an extension agreement dated January 23, 1989. Also on or about January 18, 1988, debtors entered into a security agreement with United Savings in order to secure the indebtedness represented by the January 18 Note, purporting to grant a security interest in their interest in the Wal–Mart Profit Sharing Plan.

On or about April 8, 1988, debtors executed and delivered to United Savings, for valuable consideration, another promissory note in the principal amount of $15,000.00. The maturity of this second Note was extended to April 8, 1989 by an extension agreement dated January 23, 1989. Also on or about April 8, 1988, debtors entered into a second security agreement with United Savings, again granting a security interest in debtors' interest in the Wal–Mart Plan.

On or about May 9, 1988, Mr. Green executed, at the request of United Savings, a Wal–Mart Stores, Inc. Profit Sharing Trust Alternative Beneficiary Form for Married Participant, Form B., designating United Savings as beneficiary of his interest in the Wal–Mart Profit Sharing Trust. Mrs. Green's signature purports to appear on page 3 of Form B. Mrs. Green has not admitted that the signature which appears as hers is genuine, although she does admit executing other loan documents.

On or about May 8, 1988, Sherry Jones, Assistant Vice President of United Savings mailed an acknowledgement and notice of assignment to Wal–Mart at its offices in Bentonville, Arkansas. The Profit Sharing Department at Wal–Mart states that it did not receive the letter and "Form B" and that it does not appear in Mr. Green's file.

United Savings did not file a Uniform Commercial Code financing statement of its claimed security interest in connection with the assignment of the Wal–Mart Profit Sharing account of debtors. Debtors' total outstanding indebtedness to Defendant United Savings and Loan Association on the two loans, including principal and secured interest, as of July 27, 1989, was as follows: 1). Note of 01/18/88—principal $29,504.00; interest $1,493.72, late charges $50.97, total $31,048.69; 2). Note of

04/08/88—principal $13,000.00, interest $704.54, late charges $23.42, total $13,727.96.

On or about December 22, 1989, subsequent to the filing of their bankruptcy petition, debtors filed an Amended Schedule B–4 in which Mr. Green claimed his interest in the Wal–Mart Profit Sharing Plan to be excluded from the bankruptcy estate, and alternatively, claimed the interest as exempt property under Section 513.430(10)(e) of R.S.Mo. The Trustee in bankruptcy filed his objection to the claimed exemption on or about December 27, 1989.

### ISSUES PRESENTED

1. Are debtors' interests in the Wal–Mart Profit Sharing Plan and Profit Sharing Trust Agreement included as property of their bankruptcy estate pursuant to 11 U.S.C. § 541(a) or excepted from the estate pursuant to 11 U.S.C. § 541(c)(2)?

2. Are debtors' interests in the Wal–Mart Profit Sharing Plan and Profit Sharing Trust Agreement exempt from their bankruptcy estate pursuant to 11 U.S.C. § 522(b)?

3. Does United Savings have a valid, perfected security interest in debtors' interests in the Wal–Mart Profit Sharing Plan?

### SUMMARY OF POSITIONS

A summary of each of the parties' relative positions is useful in understanding the context of the issues facing the Court. The Chapter 7 Trustee seeks a turnover of funds representing the beneficial interest of debtor Howard Green in the Wal–Mart Profit Sharing Plan and Trust. Relying upon the precedent established in the Eighth Circuit, the Trustee argues that the Wal–Mart Profit Sharing Plan and Trust does not qualify as a spendthrift trust, and therefore debtors' interests are included in their bankruptcy estate under 11 U.S.C. § 541. The Trustee also argues that debtors cannot exempt their interests in the plan pursuant to 11 U.S.C. § 522(b) and Missouri law. Finally, the Trustee submits that the anti-alienation provisions of the profit sharing plan and trust prohibit the assignment of the debtors' interests, thus rendering the purported security interest of United Savings ineffective.

The arguments of Wal–Mart, Wachovia, and debtors are similar to each other. They submit that the anti-alienation provisions prohibit the assignment and alienation of debtors' interests. Therefore, a valid spendthrift trust has been created, thus preventing the attachment of United Savings' security interest, and excepting debtors' profit sharing interest from property of their bankruptcy estate under 11 U.S.C. § 541(c)(2). These defendants also argue that assuming that debtors' profit sharing interest became part of their bankruptcy estate, debtors are entitled to exempt their interest pursuant to 11 U.S.C. § 522(b) and Missouri law. Wal–Mart and Wachovia also submit that assuming that the profit sharing interest is included in the estate and is not exempt, the Chapter 7 Trustee has no greater powers than that of the debtors, and therefore, there is no present right of the debtors which the Trustee may exercise. Wal–Mart and Wachovia also propose various policy arguments in support of their position. For example, they argue that ERISA requires all Plans, as a condition of their non-taxable status, to contain language prohibiting alienation of the interests of participants, that the effect of granting the Trustee's Complaint for Turnover would be to invalidate the anti-alienation provisions, and that the result would be that the entire Wal–Mart Plan and Trust would be stripped on its non-tax status.

United Savings submits that it is the holder of a security interest in and assignment of debtors' profit sharing interest, and that regardless of the Trustee's interest in the profit sharing plan, the security interest must be recognized and the debt owing to United Savings must be considered a debt secured by the profit sharing interest.

### CONCLUSIONS OF LAW

1. *Status of the Profit Sharing Interest in Bankruptcy—Spendthrift Trust*

The standard analysis applicable in the Eighth Circuit to pension interests was es-

tablished in *In re Graham*, 726 F.2d 1268 (8th Cir.1984):

> 1. The bankruptcy estate of a debtor is comprised of all legal and equitable interests of the debtor (11 U.S.C. § 541(a));
> 2. The interests of a debtor in a spendthrift trust shall be *excluded* from the bankruptcy estate, thus never becoming part of the estate (11 U.S.C. § 541(c)(2));
> 3. Interests of a debtor that have become part of the bankruptcy estate—those not excluded by the provisions of Section 541(c)(2)—may be *exempted* from the estate (11 U.S.C. § 522(b)).

*Graham*, 726 F.2d at 1271–72. This method of analysis is applied to pension interests on a case-by-case basis, regardless of their status as part of an ERISA or non-ERISA plan. *In re Swanson*, 873 F.2d 1121, 1122–23 (8th Cir.1989). A case-by-case analysis is imperative because of the flexibility of rights and powers that may exist under each plan. The overall purpose of such analysis is to determine whether the pension interests should be administered by the bankruptcy trustee as part of a debtor's Chapter 7 case. Thus, the Court must first determine whether the Wal-Mart Profit Sharing Plan and Trust qualifies as a spendthrift trust, thereby excluding debtors' interests from the bankruptcy estate.

▉▉▉▉ Debtors were residents of, and Mr. Green was employed in, the state of Missouri when they filed their bankruptcy petition. The terms of the Wal-Mart Profit Sharing Plan and Trust provide that its terms shall be interpreted under Arkansas law. However, Mo.Rev.Stat. § 456.234 provides:

> The meaning of a disposition in an instrument creating or amending a trust shall be determined by the local law of a particular state selected by the settlor in his instrument unless the application of that law is contrary to the public policy of this state otherwise applicable to the disposition.

Thus, either Arkansas or Missouri law could apply. The Court concludes that re-gardless of the state law that is applied, the Wal-Mart Profit Sharing Plan and Trust is not a valid spendthrift trust. *Halliburton v. Owen Family Trust*, 28 Ark. App. 314, 773 S.W.2d 453 (1989); Mo.Rev. Stat. § 456.080; *Electrical Workers v. IBEW*, 583 S.W.2d 154 (Mo.1979). It is recognized that despite the language of the document creating the trust, spendthrift provisions will be rendered invalid, as a matter of public policy, if not consistent with the traditional purpose and character of spendthrift trusts. A spendthrift trust is valid if it provides a method for the settlor to give maintenance and support to a beneficiary without entrusting the entire gift to the beneficiary all at once. Generally, it is recognized that, as a matter of public policy, an individual is not entitled to shield his assets from his creditors by simply transferring them to a trust of which he is beneficiary. ("Self-settled trusts") *Restatement of Trusts, 2d*, § 156; Bogert, *Trust and Trustees*, § 223 (Rev.2d. Ed. 1979). The effect of a self-settled trust is not to provide maintenance and support for someone else, but to merely shift the settlor's assets from one pocket to another. Thus, a self-settled trust will not be afforded spendthrift protection despite the existence of spendthrift language. Likewise, the very basis of a spendthrift trust—provision of maintenance and support to someone in a manner that protects the assets from the beneficiary's improvidence—fails when the settlor has given the beneficiary the ability to exercise dominion or control over the corpus form. ("Beneficiary controlled trusts") *Restatement of Trusts, 2d*, § 153(2); Bogert, *Trust and Trustees*, § 228 (Rev.2d Ed.1979).

In the context of bankruptcy, severa[l] appellate courts have invalidated the spendthrift protection provided by ERISA anti-alienation provisions or similar non-ERISA anti-alienation provisions where the trust at issue was in an impermissible form.[1]

In this case, there is ample evidence of the existence of beneficiary control. Like

---

1. *In re Graham, supra; In re Swanson, supra; In re Goff*, 706 F.2d 574 (5th Cir.1983); *In re Brooks*, 844 F.2d 258 (5th Cir.1989); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re*

*Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986).

the debtors in *Swanson*, Mr. Green is a fully vested member of the profit sharing plan who is entitled to distribution if he terminates his employment. Section VI, Paragraph 6.4, Profit Sharing Plan. Upon notice, Mr. Green also has the unrestricted right to vote the shares of Wal–Mart stock attributed to his account and may also receive dividends from Wal–Mart stock. Section VI, Paragraphs 6.1, 6.4, Profit Sharing Trust Agreement. He also has the right to designate the beneficiary of certain benefits, and to elect the form of distributions from the profit sharing plan. Section VI, Paragraphs 6.3, 6.6, Profit Sharing Plan. These rights evidence the existence of a certain degree of control over the *res* of the profit sharing plan and trust. Indeed, the debtors in *Swanson*, who only had the power to gain access to the pension interests if they quit their jobs, had less control over their pension interests than Mr. Green has in his profit sharing interests. The Eighth Circuit concluded that this right, in and of itself, was sufficient to render the spendthrift provisions invalid and include the pension interest in the property of the bankruptcy estate. *Swanson*, 873 F.2d at 1124. Debtors' interest in the Wal–Mart Profit Sharing Plan and Trust is sufficiently controlled by them such that the trust cannot be considered a spendthrift trust for their benefit. Thus, debtors' profit sharing plan interests are not *excluded* from, and shall be considered property of, their bankruptcy estate.

The Court is aware of the potential tax ramifications that Wal–Mart and Wachovia raise by means of the IRS letter, attached to the Stipulation of Facts as Exhibit 20. The IRS concludes that funds in an ERISA and tax qualified plan do not become property of the bankruptcy estate because of the express exclusion of spendthrift trusts under 11 U.S.C. § 541(c)(2). Exhibit 20, p. 3. However, this conclusion is inconsistent with the Eight Circuit's holding in *Graham*. Indeed, it appears that the IRS would consider a qualified ERISA and tax plan, containing provisions allowing the settlor to be the beneficiary and granting him control over the trust *res*, to be a valid spendthrift trust simply because the plan and trust contained the requisite language.

Clearly, the focus of the IRS is on the tax qualification of ERISA plans and trusts, and not the effect on the rights of a bankruptcy trustee.

■ Furthermore, it should be pointed out that in ruling that a debtor's interest in an ERISA-qualified plan is an asset of his bankruptcy estate, a court does not invalidate the anti-alienation provisions of the plan. The Court simply finds that such provision, while effective against a creditor, is not effective against the bankruptcy trustee and does not prevent the interest from being administered in bankruptcy. The distinction noted here is based upon the rights of a Chapter 7 trustee. In addition to exercising the rights available to creditors, 11 U.S.C. § 544(a) and (b), the bankruptcy trustee succeeds to all rights and assets of the debtor. The issue of whether a debtor's assets could be reached by creditors is not determinative of whether all such rights and assets are brought into the bankruptcy estate. Rather, subject to allowable exemptions, all legal and equitable interests of a debtor constitute the bankruptcy estate to be administered by the bankruptcy trustee. 11 U.S.C. § 541(a). This is the trade-off the debtor makes in exchange for his discharge. Since the Court here is not invalidating the anti-alienation provision but merely determining that the pension interest is not excluded from the estate, there should be no basis for arguing a tax impact in any event.

### 2. Status of the Profit Sharing Interest in Bankruptcy—Exemptions

■ The next step in the analysis requires a determination of whether debtors may exempt their profit sharing interest. Once property is brought into the bankruptcy estate, a debtor is allowed to in effect remove it from the estate if such property can be claimed as exempt. Debtors are Missouri residents; since the Missouri legislature has seen fit to opt-out of the federal bankruptcy exemption scheme, debtors are limited to those exemptions that are permitted under Missouri law.

Pursuant to Mo.Rev.Stat. § 513.427, debtors are entitled to exemptions available under Missouri law or federal non-bankruptcy exemptions. Mo.Rev.Stat.

§ 513.430(10)(e) allows debtors to exempt their pension interest to the extent reasonably necessary for their support. In this district, this provision has been interpreted as requiring review of several factors prior to determining whether the pension is reasonably necessary to the support of debtors. *In re Bartlett*, 67 B.R. 455 (Bankr.W.D.Mo.1986), citing *In re Flygstad*, 56 B.R. 884 (Bankr.N.D.Ia.1986). In the present matter, the Court concludes that Howard Green's age, health, ability to work, and the related right to have future profit sharing contributions made on his behalf evidences the lack of a present need for the profit sharing interest. Unlike the debtor in *In re Kendrick*, 106 B.R. 605 (Bankr.W.D.Mo.1988), his profit sharing interest has grown to a value of over $110,000 since contributions were made beginning in 1978. Thus, it is possible to conclude that contributions made on his behalf during the rest of his working life will equal, or be greater than, the present value of the profit sharing interest.

Wal–Mart and Wachovia submit that because debtors may choose other non-bankruptcy federal exemptions under either Mo. Rev.Stat. § 513.427 or 11 U.S.C. § 522(b)(2)(A), the ERISA anti-alienation provisions provide a non-bankruptcy federal exemption for debtors' profit sharing interest. This argument has been dismissed by the other divisions of this Court. *In re Gaines*, 106 B.R. 1008 (Bktcy.W.D.Mo.1989) (See, J.); *In re Schmitt*, 113 B.R. 1007 (Bktcy.W.D.Mo.1990) (Koger, C.J.) For the reasons set out in those decisions, this argument is rejected.

3. *Security Interests of United Savings*

■ United Savings claims that it is the assignee of debtors' interest in their profit sharing, as security for the indebtedness due and owing by debtors to United Sav-

ings. It is clear that debtors and United Savings intended to create a security interest in debtors' profit sharing interests to serve as collateral for the debt owing to United Savings. At the time of the execution of the two promissory notes and security agreements, debtors were residents of the state of Missouri. Pursuant to the provisions of the Missouri version of the Uniform Commercial Code, United Savings had a perfected security interest in debtors' beneficial interest in the Wal–Mart Profit Sharing Plan and Trust, even though no financing statement was filed. R.S.Mo. 400.9–302(1)(c); R.S.Mo. 400.11–104. Accordingly, but for the existence of the anti-alienation provisions, United Savings would have a valid security interest in the debtors' profit sharing plan interest.

The recent case of *Guidry v. Sheet Metal Workers National Pension Fund*, — U.S. —, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), is relevant. In *Guidry*, the Supreme Court protected the ERISA pension interests of a labor union official, who was not in bankruptcy, from the claims of the union which he had defrauded. In doing so, the Court said:

Section 206(d) [29 U.S.C. § 1056(d)(1)] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners ... even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task. *Guidry*, 110 S.Ct. at 687–688.

The anti-alienation provisions prohibit the attachment of United Savings' security interest under the precedent established in *Guidry*. The court therefore holds that United Savings security interest did not attach to the debtors' profit sharing interest due to the existence of the anti-alienation provisions included in the Wal–Mart Profit Sharing Plan.[2]

2. It might be argued, based on the quoted language in *Guidry*, that that decision should be read to protect a debtor's pension share even from the claim of a bankruptcy trustee. In other words, it could be argued that *Guidry* overrules *Graham*. However, *Guidry* did not involve a debtor in bankruptcy, creditors of a bankruptcy estate, or a Chapter 7 trustee. Unlike *Guidry*, this Court is faced with remedying

two apparently conflicting federal schemes. Indeed, it could be argued that unlike *Guidry*, the Bankruptcy Code does provide statutory test creating an exception to ERISA. As both *Graham* and *Swanson* recognized, if ERISA or other pension interests are excluded from the estate, then the provisions of 11 U.S.C. § 522(d)(10)—the bankruptcy exemption—are

#### 4. *Turnover of Funds*

■ The Court here orders that Mr. Green's share of the Plan be turned over to the bankruptcy trustee immediately. It might be argued that since the debtor himself could not gain access to such funds until his employment was terminated, the trustee should be required to wait as well for such funds. This is exactly the situation faced by the Eight Circuit in *Swanson.* Despite the fact that the debtor's only control over the trust in *Swanson* was the right to distribution upon the termination of employment, the Eighth Circuit affirmed the order compelling the turnover of the trust funds to the bankruptcy trustee. *Swanson,* 873 F.2d at 1125. The result in *Swanson* is a practical one. If a trustee has to wait for funds to which he is entitled, and as to which the debtor has no claim, there is no benefit to the debtor, but there is a harm to the creditors who in turn are forced to wait for their share of such proceeds. Requiring that the funds be turned over immediately enables the bankruptcy case to be processed as expeditiously as possible.

The Court concludes that the Trustee is entitled to payment from the Wal–Mart Profit Sharing Plan and Trust in an amount equal to the value of the plan as of January 1, 1989. This amount represents the last Plan Year contributions and allocations were made on Mr. Green's behalf prior to the filing of his bankruptcy petition. Any Plan Year contributions and allocations subsequent to January 1, 1989, were not interests of the debtor in property as of the commencement of the estate, and are not considered property of the estate.

#### CONCLUSION AND ORDER

The Court holds, based upon *Graham* and other controlling precedent, that Mr. Green's share of the Wal–Mart Plan is an asset of his bankruptcy estate, and that the anti-alienation provisions of the Plan do not place such interest outside the reach of a bankruptcy trustee. Nevertheless, such anti-alienation provisions do serve to invalidate the pre-bankruptcy grant of a security interest in such share. The apparent affect is that pension interests of a debtor in bankruptcy are treated differently than those of a person not in bankruptcy. Such result is mandated by *Guidry* and *Graham,* and the results in those cases are mandated by the differing Congressional purposes in enacting ERISA and the Bankruptcy Code. ERISA was intended to allow workers to accumulate monies for retirement by not being taxed on savings until the funds are withdrawn for use. So that such funds would be available at retirement Congress required, as a prerequisite for such preferential tax treatment, that each Plan contain provisions prohibiting the participants from transferring or otherwise alienating their share of Plan assets, and shielding such assets from claims of their creditors until the funds are in fact withdrawn. When withdrawn, the creditors of course could gain access to such funds to satisfy their claims, even though they are the proceeds of an ERISA Plan with the required anti-alienation language.

A debtor who files bankruptcy seeks to be discharged from his debts now. The price he pays for such discharge is that all assets of his estate must be made available to his creditors, subject to allowable exemptions. In Missouri, a debtor is entitled to exempt his share of a pension plan to the extent reasonably necessary for the support of the debtor and his dependents. That is consistent with the congressional policy in enacting the Bankruptcy Code—to give a debtor a fresh start by discharging debts, but at the same time to make available to creditors any assets not needed for a fresh start. ERISA does not create a federal exemption for the assets of such Plans. It simply shields those assets from the claims of creditors until they are withdrawn. Any other result would allow a Dr. Graham to transfer his assets into a plan which contains the required ERISA anti-alienation language, but over which he has

rendered meaningless. *Graham,* 726 F.2d at 1272; *Swanson,* 873 F.2d at 1124. The policies and goals underlying the administration of bankruptcy cases and the rights of debtors in bankruptcy, which were not addressed in the *Guidry* opinion, cause a different result as to a person who files bankruptcy.

control, to then file bankruptcy and discharge his debts, and to then withdraw the plan funds free from the claims of his creditors. Or, it would allow Mr. Green in this case to terminate his employment with Wal–Mart immediately after filing bankruptcy, to then withdraw from the Wal–Mart Plan not just the amount reasonably necessary for the support of himself and his dependents, but the entire amount in his account, and to then discharge his debts and be on his way. Such a result would not be consistent with the purposes of either ERISA or the Bankruptcy Code.

It is, therefore, ORDERED as follows:

1. Defendants shall, within 15 days, account to Plaintiff for all contributions made to, all earnings, additions or increases to, and all withdrawals from the Wal–Mart Stores, Inc. Profit Sharing Plan and the Wal–Mart Stores, Inc. Trust, by or on behalf of the debtor Howard C. Green, to and until January 1, 1989; and

2. Defendants shall, within 15 days, pay over to Plaintiff all of debtor Howard C. Green's interest in the Wal–Mart Stores, Inc. Profit Sharing Plan and Wal–Mart Stores, Inc. Trust, as of such date; and

3. Trustee shall, from the proceeds of the funds turned over, first pay any tax liability incurred by debtors or by the estate as the result of the distribution of the Wal–Mart Stores, Inc. Profit Sharing Plan and the Wal–Mart Stores, Inc. Trust, prior to making any distribution to creditors of this bankruptcy estate.

This Memorandum constitutes finding of fact and conclusions of law under Fed.R. Bankr.P. 7052.