**In re Robert Leroy VICKERS, Betty Jean Vickers, Debtors.**

**Bankruptcy No. 90–30089–SW–7.**

United States Bankruptcy Court, W.D. Missouri.

July 5, 1990.

J. Kevin Checkett, Carthage, Mo., for petitioner.

W. Henry Johnson, Neosho, Mo., for respondent.

### ORDER DENYING TRUSTEE'S OBJECTION TO EXEMPTION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the Chapter 7 Trustee's objection to the debtors' exemptions. The sole issue is whether a Missouri resident who is beneficiary of an ERISA pension plan is entitled to claim any portion of his benefits under such plan as exempt. A majority of the courts considering this question have held that ERISA pre-empts the field, and that any state law exempting ERISA benefits is therefore invalid.[1] I respectfully disagree with the majority view, and find that the Missouri statute, which allows the debtor to claim benefits as exempt to the extent reasonably necessary for the support of the debtor and his dependents, is not pre-empted. Since the parties to this action agree that the benefits at issue are reasonably necessary for the support of Mr. and Mrs. Vickers, the trustee's objection to such exemptions will be denied.

### II. FACTS

The facts are not in dispute. Debtor Robert Leroy Vickers is retired. His wife, Betty Jean Vickers, is not employed outside

---

1. *In re Siegel,* 105 B.R. 556 (D.Ariz.1989); *In re Gaines,* 106 B.R. 1008 (Bkrtcy.W.D.Mo.1989); *In re Hirsch,* 98 B.R. 1 (Bkrtcy.D.Ariz.1988); *In re Komet,* 104 B.R. 799 (Bkrtcy.W.D.Tex.1989); *In re Messing,* 20 B.C.D. 819, 114 B.R. 541 (Bkrtcy. E.D.Tenn.1990). *But see, In re Volpe,* 100 B.R. 840 (Bkrtcy.W.D.Tex.1989).

the home. Their bankruptcy schedules show unsecured debts of $11,240, all of which are for medical services, as well as a debt of $4,168 secured by a 1987 Ford Pickup. They do not own a residence. Their sole monthly income consists of $467.00 from Social Security, and $84.53 from the pension plan at issue in this case, for a total of $551.53 per month. They have monthly living expenses of $1,017.00. The retirement benefits flow from Mr. Vickers' prior employment at FAG Bearing Company. He began receiving such benefits in approximately February, 1990.

## III. LEGAL ANALYSIS

In his objection to exemption, the Trustee states that "the 401K is entitled no state exemption ..." There is no dispute that the debtor's interest in the plan is an asset of the bankruptcy estate, and is not excluded from the estate as a spendthrift trust. 11 U.S.C. § 541(a) and (c)(2); *In re Graham*, 726 F.2d 1268 (8th Cir.1984). The issue is whether the debtor may claim such interest as exempt. Missouri law allows a bankruptcy debtor to claim such benefits as exempt to the extent reasonably necessary for the support of the debtor and his dependents:

The following property shall be exempt from attachment and execution to the extent of any persons interest therein:

.    .    .    .    .

(10) Such person's right to receive:

.    .    .    .    .

(e) A payment under a stock bonus, pension, profit-sharing, annuity or similar plan or contract on account of illness, disability, death, age, or length of service to the extent reasonably necessary for the support of such person or any dependent of such person unless;

(a) Such plan or contract was established by or under the auspices of an insider that employed such person at the time such person's rights under such plan or contract arose;

(b) Such payment is on account of age or length of service; and

(c) Such plan or contract does not qualify under § 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409); ...

R.S.Mo. 513.430(10)(e).

The cases invalidating such state exemption statutes have found that in enacting ERISA Congress intended to pre-empt the field as to such pension plans, and that the state legislatures are prohibited from enacting any legislation touching upon ERISA plans in any way. These cases all rely upon language in the Supreme Court's opinion in *Mackey v. Lanier Collections Agency and Service*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), to the effect that any state law which refers to or is connected with ERISA is pre-empted and invalid. Since I believe that the holding in *Mackey* is much narrower than that, a brief explanation of ERISA, the Bankruptcy Code exemption provisions, and then *Mackey* might be helpful.

In response to a national concern about loss of private pension benefits resulting from financial difficulties of employers and job mobility of employees, Congress enacted ERISA. This act governs two types of employee benefit plans: (1) "Employee pension benefit plans," which provide retirement or deferred income to employees and (2) "Employee welfare benefit plans," which provide fringe benefits such as medical and life insurance to Plan participants. ERISA imposes upon pension plans a variety of substantive requirements relating to participation, funding, and vesting. 29 U.S.C. §§ 1051–1086. It also establishes uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans. 29 U.S.C. §§ 1021–1031, §§ 1101–1114.

To eliminate state interference with the accomplishment of ERISA goals, Congress included pre-emption language in the statute, as follows:

a. "Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws in so far as

they now or hereafter relate to any employee benefit plan ...

29 U.S.C. § 1144(a). *See, In re Volpe, supra* 100 B.R. at 842–843.

ERISA also requires pension plans to contain prohibitions against assignment or alienation of plan benefits. Section 206(d) of ERISA, as set forth at 29 U.S.C. § 1056(d), provides;

> (1) "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

ERISA was enacted in 1974. There is nothing in the statute, or in its legislative history, as to what would happen to the interest of a beneficiary who files bankruptcy. In 1978, Congress enacted the Bankruptcy Code, which was intended to be a comprehensive overhaul and modernization of the bankruptcy system.[2] Section 541 of the Bankruptcy Code provides that upon commencement of a case, all property of the debtor becomes property of the bankruptcy estate. An exception to that all inclusive language is found in § 541(c)(2):

> "A restriction on a transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this Title."

Once property is determined to be in the bankruptcy estate, the debtor is allowed to exempt from it certain eligible property. Section 522(b) grants individual states the choice of allowing their debtors two methods of exempting property (state exemptions or federal exemptions) or only one method (state exemptions). 11 U.S.C. § 522(b) provides in relevant part as follows:

> "Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection ... Such property is—
>
> (1) property that is specified under subsection (d) of this section, unless the State law applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
>
> (2)(A) any property that is exempt under Federal laws, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place;
> ...

Thus, § 522(b)(1) sets out a specific list of Federal bankruptcy exemptions and provides that such exemptions are available to a debtor unless he or she lives in a state which has chosen to "opt-out" by requiring its debtors to claim state exemptions only.[3] The Federal bankruptcy exemptions include the following:

> (d) the following property may be exempted under subsection (b)(1) of this section:
>
> (10) the debtor's right to receive—
>
> (E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
>
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

---

**2.** House Report No. 95–595, p. 3, 1978 U.S. Code Cong. and Ad. News, vol. 5, p. 5963; Senate Report, No. 95–989, p. 1, 1978 U.S. Code Cong. and Ad. News, Vol. 5, p. 5787.

**3.** As can be seen, § 522(b)(2)(A) provides that even in a state which has opted-out of the § 522(d) Federal bankruptcy exemptions, a debtor is entitled to exempt any property which is exempt under Federal law other than § 522(d). ERISA is not a "Federal law" upon which a § 522(b)(2)(A) exemption can be based. *In re Graham,* 726 F.2d at 1274; *Matter of Goff,* 706 F.2d 574 (5th Cir.1983); *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985); *In re Daniel,* 771 F.2d 1352 (9th Cir.1985).

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409).

11 U.S.C. § 522(d)(10)(E).

Thus, absent an opt-out by Missouri, Mr. Vickers would be entitled to exempt his interest in the plan to the extent reasonably necessary for his and his wife's support. But, of course, Missouri has opted out of the Federal exemptions and permits its debtors to claim only state exemptions. R.S.Mo. 513.427. However, as to pension plans, as can be seen by the statute cited previously, R.S.Mo. 513.430(10)(e), Missouri's exemption law is virtually identical to that of 11 U.S.C. § 522(d)(10)(E).

In *Mackey*, the Supreme Court considered the question of whether the interests of persons in an ERISA Plan could be garnished by their creditors. The beneficiaries involved were not in bankruptcy, but were being pursued in state court by a collection agency on behalf of their creditors. Significantly, the interests involved in *Mackey* were in an employee welfare benefit plan, and not an employee pension benefit plan. As noted, ERISA requires that pension benefit plans contain language shielding the interest of beneficiaries from their creditors. There is no such anti-alienation requirement as to welfare benefit plans. In *Mackey*, the Court considered whether a Georgia statute prohibiting garnishment of an interest in an ERISA plan was pre-empted by ERISA itself. Unanimously, the Court found that if Congress wanted to protect welfare benefit plans from claims of creditors it knew how to do it—by enacting the same anti-alienation provision it enacted for pension benefit plans. Therefore, Congress did not intend to shield welfare benefit plans from such claims. As a result, the State anti-garnishment statute, which had the effect of so shielding such plans, was in conflict with ERISA and pre-empted by it. In so holding, the Court pointed out that ERISA § 514(a) pre-empts any and all state laws in

so far as they may now or hereafter relate to any employee benefit plans. 29 U.S.C. § 1144(c); *Mackey*, 108 S.Ct. at 2185.

The Court then considered whether Georgia's general garnishment statute could be used by creditors to seize the interests of plan beneficiaries to satisfy debts. By a 5–4 vote, the Court held that ERISA does not forbid state law garnishment of an ERISA welfare benefit plan, even though the purpose may be to collect a judgment against the plan participant. Since Congress did not intend to shield such interests from creditors, and did not set up any conflicting procedure to collect judgments against plan participants, the Court found no pre-emption. The general Georgia garnishment statute, as applied to the welfare benefit plan in *Mackey*, might be said to "relate to" a Plan covered by ERISA. However, since the application of that statute did not conflict with, and was consistent with, the intent of Congress in ERISA, the Court allowed the garnishment to proceed. *Mackey*, 108 S.Ct. at 2186–87.

A number of Courts have interpreted *Mackey* to mean that a state statute which specifically refers to ERISA is pre-empted, regardless of whether it conflicts with ERISA. Thus, this reasoning goes, the Georgia anti-garnishment statute was struck down because it specifically referred to ERISA, while the general garnishment statute was saved because it did not. However, this reasoning misrepresents *Mackey*. The anti-garnishment provision conflicted directly with the intent of Congress, so it was pre-empted. But the general garnishment statute was consistent with such intent, so it was not pre-empted.

The Missouri pension exemption is likewise entirely consistent with both ERISA and the Bankruptcy Code. It should be noted that if pre-emption were found, Mr. Vickers would be denied his pension benefit of $84.53 per month, despite the fact that all parties agree that such money is reasonably necessary for his support. And, he and all other Missouri debtors would be denied all pension benefits, even though both the Congress of the United States and the legislature of the State of Missouri

have enacted statutes providing that a bankruptcy debtor can exempt such pension benefits to the extent reasonably necessary for support. The intent of both of these legislative bodies is clear and consistent. To hold otherwise would defeat the purpose of the Bankruptcy Code and the Missouri exemption statute.

Furthermore, such a holding would defeat the Congressional purpose in enacting ERISA. Congress specifically provided that ERISA would not be construed to conflict with any law of the United States. Section 514(d) of ERISA reads as follows:

> (d) *"Alteration, amendment, modification, invalidation, impairment or supersedure of any law of the United States prohibited,*
>
> Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in §§ 1031 and 1137(b) of this Title) or any rule or regulation issued under any such law."

29 U.S.C. § 1144(d). Thus, Congress did not intend ERISA to conflict with any other Federal law. The Bankruptcy Code is such a law. As shown, the Code would allow the debtor to exempt his pension benefits to the extent necessary for support. The Code also allows states to opt-out and create their own bankruptcy exemptions. Surely Congress did not intend to prohibit states from enacting exemption laws similar or identical to those contained in the Bankruptcy Code itself. In any event, Congress determined that the Code is paramount to ERISA. The same is true for state laws enacted pursuant to specific authority of the Bankruptcy Code.[4]

 This conclusion is further supported by general rules of statutory construction. The Bankruptcy Code specifically deals with the exemption of interests in pension plans. ERISA deals generally with such plans but does not consider their status in a bankruptcy case. A more specific statute should be given precedence over a more general one. *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980). Also, absent a clear manifestation to the contrary, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction. *Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 277 (8th Cir.1983). If Congress intended to prohibit states from allowing debtors to exempt ERISA plans, it would have so restricted the opt-out provision in the Bankruptcy Code. Since the Code specifically allows the states to create exemptions, and since ERISA does not prohibit or even speak to such exemptions, the only way to harmonize the two federal statutes is to allow the exemption.

The Trustee's objection to exemption is DENIED.

---

4. It should be noted that courts have upheld state statutes enacted pursuant to Federal law, even though such statutes "relate to" ERISA plans. For example, in *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2902–03, 77 L.Ed.2d 490 (1983), the Supreme Court used § 514(d) of ERISA to find that a New York statute, which regulated the benefits available to pregnant employees, was not pre-empted by ERISA because the state statute was useful in enforcing another federal statute, namely Title VII of the Civil Rights Act of 1964. The Court found that given the importance of state fair employment laws to the Title VII enforcement scheme, pre-emption would frustrate the goals of Title VII and would therefore, in the words of § 514(d), "modify" and "impair" federal law. Here, pre-emption of Missouri's pension exemption statute would likewise modify and impair the Bankruptcy Code provision delegating to states the right to create their own bankruptcy exemptions, and would therefore violate § 514(d) of ERISA.