**In re David Benjamin BOYKIN, and Sandra Lee Boykin, Debtors.**

**Bankruptcy No. 90–30137–SW–7.**

United States Bankruptcy Court, W.D. Missouri.

Sept. 13, 1990.

J. Kevin Checkett, Carthage, Mo., for trustee.

Thomas L. Williams, Joplin, Mo., for debtors.

## ORDER DENYING OBJECTION TO EXEMPTIONS

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The matter before the Court is the Chapter 7 Trustee's objection to the pension exemptions of debtor Sandra Lee Boykin. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and may enter final orders pursuant to 28 U.S.C. § 157(b)(2). For the reasons stated below, the Court concludes that the pension interests are valid exemptions under Missouri law and denies the objection.

The facts of this case are essentially undisputed. Debtor is a 25 year old woman employed as an office cashier by the Wal–Mart store in Joplin, Missouri. She has been employed by Wal–Mart for 8½ years. She is presently divorced, has custody of her dependent son, and her sole means of financial support is her Wal–Mart salary. She receives no child support. She projects total monthly living expenses of $1,585.00, and expects to receive monthly take home pay of $1,320.00.[1] During her employment at Wal–Mart, debtor has become fully vested in the Wal–Mart Profit Sharing Plan ("Plan"), in which approximately $12,000.00 is held for her benefit. If debtor dies before receiving her benefits under the Plan, her son shall receive such benefits.

In debtor's schedules, her interest in the Plan is listed first as an interest in a spendthrift trust that does not become an asset of the bankruptcy estate. (11 U.S.C. § 541(c)(2)). In the alternative, if the interest does come into the estate, she contends that the interest, or some portion of it, is exempt under Missouri law. In support of the exemption argument, she makes three points. First, she contends that the monies

1. Monthly living expense figure determined from Debtor's Exhibit # 1. Monthly take home pay figure determined from Schedule of Current Income and Expenditures, filed April 16, 1990.

in her pension plan constitute earnings, that under Missouri law (R.S.Mo. § 525.030(2)) a head of household can exempt 90% of her earnings from garnishment and that, therefore, 90% of her pension plan is exempt. While not necessary to the result reached, I reject this argument.[2]

Second, the debtor contends that in any event she is entitled to exempt $1100 of her pension monies under Missouri law (R.S.Mo. § 513.440), which gives a head of household a "wild card" exemption of $850 plus $250 for each unmarried dependent child under the age of eighteen years. There appears to be no dispute as to debtor's entitlement to at least that much of an exemption; however, once again, that claim by the debtor is not necessary to the result reached. Finally, debtor claims that her pension benefits are reasonably necessary for the support of herself and her dependent, and are therefore totally exempt under the Missouri statute dealing specifically with exemption of pension plans. (R.S.Mo. § 513.430(10)(e)).

The Trustee has two objections to the exemptions. First, he contends that under the law of the Eighth Circuit, the Wal-Mart Plan is not a spendthrift trust, and accordingly, debtor's interest in the Plan is not excepted from the estate. Second, he contends that under the law of Missouri, debtor's interest in the plan is not reasonably necessary for the support of herself or her dependents.[3]

■ The method of analysis applied to the present situation is by now familiar.
1. The bankruptcy estate of a debtor is comprised of all legal and equitable interests of the debtor (11 U.S.C. § 541(a));
2. The interests of a debtor in a spendthrift trust shall be *excluded* from the bankruptcy estate, thus never becoming part of the estate (11 U.S.C. § 541(c)(2));
3. Interests of a debtor that have become part of the bankruptcy estate (those not excluded by the provisions of Section 541(c)(2)) may be *exempted* from the estate (11 U.S.C. § 522(d)).

*In re Graham,* 726 F.2d 1268, 1271–72 (8th Cir.1984). This method of analysis is applied to pension interests on a case-by-case basis, regardless of their status as part of an ERISA or non-ERISA plan. *In re Swanson,* 873 F.2d 1121, 1122–23 (8th Cir. 1989). This Court has previously held that under the existing precedent in this Circuit, a case-by-case analysis is required because of the different rights and powers that may exist under each plan. *In re Green,* 115 B.R. 1001 (Bankr.W.D.Mo.1990).

■ The only document introduced into evidence which evidences the terms of the Plan is Debtor's Exhibit # 2, the Summary and Plan Description for Associates of Wal-Mart Stores, Inc. The parties agree that the terms of the Plan are the same as

---

**2.** The relevant provisions of Mo.Rev.Stat. § 525.030(2) define earnings as used in that section to mean "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program".

The wage garnishment exemption is intended to protect an individual's wages and salary, regardless of the label that is applied to them by employers. By the terms of the statute, wages represent the regular and periodic payments for personal services rendered by an employee. *Dunn v. Bemor Petroleum,* 737 S.W.2d 187 (Mo. 1987); *Gerry Elson Agency v. Muck,* 509 S.W.2d 750 (Mo.App.1974).

In the present case, the contributions made to the Plan on debtor's behalf are not in any way compensation for services. Rather, they are based solely upon the profits of Wal-Mart. Distribution to the Plan directly, and to employees

indirectly, is left to the sole discretion of Wal-Mart's board of directors. Unlike those cases where contributions to a health and benefit plan are an integral part of a wage plan, *Electrical Workers v IBEW–NECA Holiday Trust Fund,* 583 S.W.2d 154 (Mo.1979), the present case involves contributions to a profit sharing plan premised solely upon the profitability of Wal-Mart. Therefore, debtor's interest in the Plan is neither compensation for personal services nor is it periodic. Thus, it is not wages and is not exempt under Mo.Rev.Stat. § 525.030(2).

**3.** Prior to the hearing, the Trustee had contended that the Missouri exemption statute is preempted by ERISA such that the debtor would not be entitled to an exemption even if the pension monies were reasonably necessary for support. However, at trial the Trustee stated that he would not pursue this argument. *See, In re Vickers,* 116 B.R. 149 (Bankr.W.D.Mo.1990).

that which was at issue in *Green.* As was evident in *Green,* debtor has the right to terminate employment and receive payment of her pension benefits. Accordingly, the Plan allows a degree of beneficiary control that is inconsistent with the law of spendthrift trusts, and as such the plan does not constitute a valid spendthrift trust. *Swanson,* 873 F.2d at 1124; *Green, supra.* Thus, debtor's interest in the Plan is not excepted from the estate under 11 U.S.C. § 541(c)(2), and is subject to administration by the Chapter 7 Trustee.

The debtor makes the argument that the precedent established by *Graham* is no longer valid due to more recent Supreme Court decisions regarding the provisions of the Employment Retirement Income Security Act (ERISA). *See, Mackey v. Lanier Collections Agency,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). That argument was rejected by this court in *In re Vickers,* 116 B.R. 149 (Bankr.W.D.Mo. 1990). Thus, the court concludes that the debtor's Plan benefits are an asset of her bankruptcy estate, and are not excluded from such estate as a spendthrift trust.

Nevertheless, the debtor claims her Plan benefits as exempt property under Missouri law. Pursuant to Mo.Rev.Stat. § 513.430(10)(e), debtor may exempt her pension interest to the extent reasonably necessary for her support. In this district, courts have applied the following list of nonexhaustive factors to determine whether the proceeds from a pension or profit sharing plan are reasonably necessary:

(1) Debtor's present and anticipated living expenses;

(2) Debtor's present and anticipated income from all sources;

(3) Age of debtor and dependents;

(4) Health of the debtor and dependents;

(5) Debtor's ability to work and earn a living;

(6) Debtor's job skills, training, and education;

(7) Debtor's other assets, including exempt assets;

(8) Liquidity of other assets;

(9) Debtor's ability to save for retirement;

(10) Special needs of the debtor and dependents;

(11) Debtor's financial obligations, e.g. alimony or support payments.

*In re Bartlett,* 67 B.R. 455 (Bankr.W.D.Mo. 1986), quoting *In re Flygstad,* 56 B.R. 884 (Bankr.N.D.Iowa, 1986).

Here, the monies involved do appear to be reasonably necessary for support. The debtor has been working at Wal–Mart since she was approximately 17 years old and is a cashier. She has no specialized job skills, training or education. She takes home approximately $1,300 per month, which is not sufficient to pay the ordinary and necessary living expenses incurred by her and her minor son. They have no other source of income, nor do they have assets which could be sold to pay living expenses. There is no evidence from which one could assume that the debtor's income will increase significantly, or that her expenses will decline. Therefore, she cannot be expected to accumulate any monies for retirement other than those available through her employment. The retirement funds which are being accumulated for her are therefore reasonably necessary for support.

One final point. In evaluating whether pension benefits are reasonably necessary for support, courts are faced with widely divergent fact patterns, each of which has to be evaluated on its own merits. At one extreme are persons whose education, job experience or income make them well able to accumulate funds for retirement. The dentist in *Gaines,* for instance, was found to be so able. *In re Gaines,* 106 B.R. 1008 (Bankr.W.D.Mo.1989). Similarly, the debtor in *Green, supra,* was a Wal–Mart store manager with gross income in excess of $31,000 per year. He had been vested for approximately 11 years, and had accumulated in excess of $110,000 in the Wal–Mart Plan. At the other extreme are cases such as *Vickers,* in which the debtor's only monthly income was from social security payments of $467 and his pension benefits

of $84.53. *In re Vickers,* 116 B.R. 149 (Bankr.W.D.Mo.1990).

■ At some threshold level the amount of pension monies accumulated for a debtor is so small that it will ordinarily be found to be reasonably necessary, unless there is proof that the debtor should be expected to accumulate significant additional funds prior to retirement. Clearly Mr. Vickers fell below that threshold level. Just as clearly, Dr. Gaines was above it. Ms. Boykin, with $12,000 in funds, falls below that level as well.

For these reasons, the Trustee's objection to exemptions is DENIED.