873 F.2d 1121
 57 USLW 2663, 21 Collier Bankr.Cas.2d 515,
19 Bankr.Ct.Dec. 840,
53 Ed. Law Rep. 446, Bankr. L. Rep. P 72,882,
11 Employee Benefits Ca 1011
 In re Dennis F. SWANSON and Janice C. Swanson and David A.
Johnson and Patricia A. Johnson, Debtors.
Hubert H. HUMPHREY, III, Attorney General, State of
Minnesota, Appellant,
v.
Sheridan J. BUCKLEY, Trustee, Appellee.
 No. 87-5513.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 19, 1988.
Decided May 2, 1989.
Rehearing and Rehearing En Banc Denied June 9, 1989.
 
 Merwin Peterson, Asst. Atty. Gen., St. Paul, Minn., for appellant.
 Sheridan J. Buckley, St. Paul, Minn., for appellee.
 Before McMILLIAN and WOLLMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The Attorney General for the State of Minnesota, representing the Teachers Retirement Association, appeals an order of the district court[1] affirming a bankruptcy court's[2] order which concluded that monies held in a state-created teachers retirement plan became property of the bankruptcy estate upon the filing of a petition in bankruptcy by the debtors. For the following reasons we affirm the order of the district court.
 
 I. BACKGROUND
 
 2
 The pertinent facts have been stipulated by the parties. The Teachers Retirement Association (TRA) was created by the State of Minnesota and it maintains a Teachers Retirement Fund (Fund), which is distributed, in amounts determined by statute, to qualifying members upon their retirement. The TRA Funds are accumulated through mandatory employee and employer contributions. Every public school teacher covered by the Fund is required to be a member of TRA as a condition of employment.
 
 
 3
 The debtors in this consolidated appeal, Dennis F. Swanson and Patricia A. Johnson, are both TRA members with rights in the Fund. As of October 3, 1983,[3] Swanson had been a TRA member for 13.6 years and he would have been eligible to receive a refund in the amount of $13,823.73. Johnson, who had been a TRA member for 19 years, would have been eligible to receive a $13,354.83 refund on the date of her bankruptcy filing.
 
 
 4
 The issue raised in this appeal is whether the mandatory contributions made by the debtors and their employers to the statutorily created retirement fund are property of their bankruptcy estates for the purposes of 11 U.S.C. Sec. 541(c)(2).
 
 II. DISCUSSION
 
 5
 Initially we note that this is primarily a dispute between the Bankruptcy Trustee and the State of Minnesota. The debtors are not parties to this action.
 
 
 6
 The debtors elected the federal exemptions which do not exempt retirement funds such as those involved in this case. The debtors' decisions seem to have been motivated by a belief that the retirement funds at issue would be excluded from their bankruptcy estate pursuant to 11 U.S.C. Sec. 541(c)(2). In any event, it is clear that had the debtors selected the exemptions provided under Minnesota law the retirement funds in this case would have been exempt. We will not speculate further as to why the debtors elected the federal exemptions rather than those provided under Minnesota law.
 
 
 7
 We begin our analysis by noting that generally under 11 U.S.C. Sec. 541 the bankruptcy estate consists of all legal and equitable interests of the debtor at the time of the filing of the bankruptcy petition. The scope of the bankruptcy estate under Sec. 541 was intended to be quite broad. In re Graham, 726 F.2d 1268, 1270 (8th Cir.1984). TRA argues, however, that the monies contributed by the debtors to the Fund are excluded from their bankruptcy estate under Sec. 541(c)(2) of the Bankruptcy Code, which honors restrictions on the transfer of any beneficial interest the debtor may have in a trust enforceable under applicable nonbankruptcy law.[4]
 
 
 8
 The nonbankruptcy law relied on by TRA in this case is a Minnesota statute which provides numerous restrictions on the transfer of Teachers Retirement Funds. The Minnesota statute, section 354.10 (1982), in effect at the time of the debtors' bankruptcy filing, provided:
 
 
 9
 The right of a teacher to avail himself of the benefits provided by this chapter, is a personal right only and shall not be assignable. All moneys to the credit of a teacher's account in the fund * * * shall belong to the state of Minnesota until actually paid to the teacher or his beneficiary pursuant to the provisions of this chapter. Any power of attorney, assignment or attempted assignment of a teacher's interest in the fund, or of the beneficiary's interest therein, by a teacher or his beneficiary, including actions for divorce, legal separation, and child support, shall be null and void and the same shall be exempt from garnishment or levy under attachment or execution and from taxation under chapter 291.
 
 Minn.Stat. Sec. 354.10 (1982).[5]
 
 10
 TRA maintains that because this statute contains restrictions that prevent its members from assigning their interests in the Fund, a literal reading of section 541(c)(2) would honor the restrictions and thus exclude the Funds from a debtor's bankruptcy estate. TRA also emphasizes that the statute prevents creditors from levying upon monies held in the Fund for the benefit of covered teachers.
 
 
 11
 This court has noted, however, that "Congress only intended by Sec. 541(c)(2) to preserve the status of traditional spendthrift trusts, as recognized by state law * * *." In re Graham, 726 F.2d at 1271.
 
 
 12
 While we recognize that Minnesota law restricts a TRA member's ability to assign TRA Funds in language akin to that found in most spendthrift trusts, we conclude that retirement plans such as the one involved in this case were not intended to be excluded from the bankruptcy estate. Section 541(c)(2) was intended to exclude a debtor's beneficial interest in a "traditional" spendthrift trust, not a statutory retirement fund.
 
 
 13
 In general terms, a spendthrift trust is one in which the right of the beneficiary to future payments of income or capital cannot be voluntarily transferred by the beneficiary or reached by his or her creditors. There is a conflict of authority among the states on the question of the validity of such trusts and on the extent to which a beneficiary's right to future income and principal can be protected.
 
 
 14
 Id.
 
 
 15
 It is clear that spendthrift trusts are recognized and enforced under Minnesota law. See In re Trust Created under Agreement with McLaughlin, 361 N.W.2d 43, 45 (Minn.1985) ("This court has long recognized the validity of spendthrift provisions * * *."). The question remains, however, whether the Fund qualifies as a spendthrift trust under Minnesota law. In In re Moulton's Estate, 233 Minn. 286, 46 N.W.2d 667, 670 (1951), the Minnesota Supreme Court noted that "[n]o particular form of words is necessary to create a spendthrift trust."
 
 
 16
 Nevertheless, Minnesota law does not explicitly discuss many of the requirements typically imposed upon such trusts. For example, most jurisdictions do not enforce an otherwise valid spendthrift trust if the settlor of the trust is also its beneficiary. See, e.g., McLean v. Central States, S.E. & S.W. Areas Pension Fund, 762 F.2d 1204, 1207 (4th Cir.1985) (interpreting Illinois law). In addition, if the beneficiary has the power to revoke the trust and exercise dominion and control over the trust res, most jurisdictions do not give the trust the protections that are generally afforded spendthrift trusts. Id. In the Moulton case the Minnesota Supreme Court made the following observation:
 
 
 17
 The validity of a spendthrift trust is upheld on the theory that the owner of property in the free exercise of his will in disposing of it, may secure such benefits to the objects of his bounty as he sees fit and may, if he so desires, limit its benefits to persons of his choice, who part with nothing in return, to the exclusion of creditors and others.
 
 
 18
 In re Moulton's Estate, 46 N.W.2d at 670 (citations omitted). Thus, Moulton contemplates an arrangement wherein the settlor of the spendthrift trust is not also its beneficiary.
 
 
 19
 We do not believe that the Fund has the necessary characteristics of a traditional spendthrift trust to exclude it from the bankruptcy estate pursuant to Sec. 541(c)(2). Notably, the Fund violates the rule that prohibits the beneficiary of a spendthrift trust from also being its settlor. The fact that the contributions to the Fund are made, at least in part, by the debtors compels a conclusion that the Fund would not be a valid spendthrift trust under Minnesota law.
 
 
 20
 In addition, our conclusion that the Fund does not qualify as a spendthrift trust under Minnesota law is compelled by the fact that the debtors are able to exercise dominion and control over the monies in the Fund. TRA members are entitled to a refund of their contributions to the Fund upon termination of employment. While this is a very limited right of control over the Funds, the ability of the beneficiary to control trust assets in any way is inimical to the policies underlying the spendthrift trust. We believe that the Fund is actually a form of deferred compensation, whereas a spendthrift trust is generally used to provide for the maintenance and support of its beneficiaries.
 
 
 21
 We recognize that the Fund does have some characteristics of a spendthrift trust, i.e., it is not assignable and creditors are barred from levying upon monies held in the Fund. On balance, however, we believe that the Fund lacks the necessary characteristics of a traditional spendthrift trust. Nevertheless, we do not intend to state a broad rule that monies in any statutory trust are not excluded from the bankruptcy estate under Sec. 541(c)(2).
 
 
 22
 Further, our decision in this case must be guided by the overriding policies of the Bankruptcy Code. We interpret Sec. 541(c)(2) narrowly because a broad reading of this exclusion would run afoul of the policies sought to be furthered through the Bankruptcy Code. The policy of enlarging the bankruptcy estate to the maximum extent allowable under the Code is of paramount importance because only then will creditors receive the distribution that they are entitled to under the Code. Section 541(c)(2) thus strikes a delicate balance between enlarging the bankruptcy estate, while still honoring the spendthrift trust donor's wishes under state law. For it is the donor's desires which are protected through the concept of the spendthrift trust. The beneficiary's desires are of little significance when determining the validity of a spendthrift trust provision and when determining whether monies in such a trust are excludable under Sec. 541(c)(2). Indeed, this is underscored by the legislative history of Sec. 541(c)(2) which notes that "[t]he bankruptcy of the beneficiary [of a spendthrift trust] should not be permitted to defeat the legitimate expectations of the settlor of the trust." H.R.Rep. No. 595, 95th Cong., 1st Sess. 176, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6136 (emphasis added).
 
 
 23
 Finally, we note that if Sec. 541(c)(2) were construed to exclude retirement funds from the bankruptcy estate then the part of the Code which provides a limited federal exemption for these funds would be rendered meaningless. See 11 U.S.C. Sec. 522(d)(10)(E)(iii) (Supp. V 1987); see also In re Graham, 726 F.2d at 1272 ("pension benefits are specifically treated under the Code's exemption provision, clearly indicating that they were intended and assumed to be part of the estate") (emphasis in original).
 
 
 24
 We thus see a coherent scheme regarding a debtor's pension rights under the Code consistent with the Code's general policy. The question of pension rights is dealt with as a matter of exemption. A debtor's interest in pension funds first comes into the bankruptcy estate. To the extent they are needed for a fresh start they may then be exempted out.
 
 
 25
 Id. at 1272-73. When interpreting statutes we favor an interpretation that is consistent with the entire statutory scheme under review and one that will not undermine complementary portions of the same statutory scheme.
 
 III. CONCLUSION
 
 26
 We conclude that the Teachers Retirement Funds became part of the debtors' bankruptcy estates pursuant to Section 541 which include all legal and equitable interests of the debtors. We also conclude that Sec. 541(c)(2) was not intended to exclude pension funds such as those involved in this case from the bankruptcy estate.
 
 
 27
 Accordingly, we affirm the order of the district court which affirmed the bankruptcy court's order compelling the TRA to turn over to the Trustee the debtors' interest in the Fund.
 
 
 
 [1]
 The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota. The district court's opinion is reported at 79 B.R. 422 (D.Minn.1987)
 
 
 [2]
 The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota
 
 
 [3]
 This is the date recited in the Stipulation of Facts entered by the parties. Swanson, however, filed his bankruptcy petition on January 10, 1985. Thus, this is the relevant date for his case. In any event, any discrepancy is not material to the issues presented and may be addressed by the Trustee in the course of administration of the bankruptcy estate
 
 
 [4]
 Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. Sec. 541(c)(2) (1982)
 
 
 [5]
 Section 354.10 (1982) was amended in 1984 to allow a court to order payment of child support out of a TRA member's beneficial interest in the Fund. See Minn.Stat. Sec. 354.10 (1984)