### In re William Eugene DAVIS & Senora Davis, Debtors.

**Bankruptcy No. 89–42659–2.**

United States Bankruptcy Court, W.D. Missouri.

March 26, 1991.

Max Jevinsky, Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for trustee.

Thomas J. O'Brien, Raytown, Mo., for debtors.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

### I. Statement of Facts

On November 17, 1989, William Eugene Davis and Senora Davis filed bankruptcy under Chapter 7. Senora Davis (Debtor) is employed as a keypunch operator at United Missouri Bancshares (UMB), where she has worked for the past 21 years. The Debtor is 53 years old and in good health, except for high blood pressure, which responds to medication. As an employee of UMB, the Debtor has acquired interests in three ERISA plans.

The first plan is the Debtor's retirement plan at UMB. This plan will pay the Debtor approximately $587.00 per month when she retires. The Trustee has conceded that the Debtor's UMB "Employee Retirement Plan" is not part of the bankruptcy estate. The second plan is the UMB ESOP Plan in which the Debtor has a vested interest, valued at approximately $39,666.76 at the time the case was filed. The third plan is the UMB Profit Sharing and Savings Plan

in which the Debtor has a vested interest, valued at approximately $25,236.97 at the time the case was filed.

The Debtor claims that her interests in the ESOP and Profit Sharing Plans (plans) are not part of the bankruptcy estate under 11 U.S.C. § 541(c)(2), or in the event that the plans are determined to be part of the estate, the Debtor claims them to be exempt. The Trustee objects to both contentions.

## II. The Bankruptcy Estate

In general, the bankruptcy estate includes all of the Debtor's legal and equitable interests at the time of the filing of the bankruptcy petition. 11 U.S.C. § 541. Congress intended for the bankruptcy estate to be as "all-encompassing as the language indicates". *In re Graham*, 726 F.2d 1268, 1270 (8th Cir.1984). A major exception to this rule is stated in § 541(c)(2): "A restriction on the transfer of the beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title". The Debtor argues that the anti-alienation clauses contained in the plans as required by ERISA, 29 U.S.C. § 1056(d)(1), constitute the type of transfer restrictions that allow an ERISA qualified plan to be excluded from the bankruptcy estate under § 541(c)(2).

The leading case interpreting § 541(c)(2) in the Eighth Circuit is *In re Graham*, 726 F.2d 1268 (1984). In *Graham*, the Court held that "Congress only intended by § 541(c)(2) to preserve the status traditional spendthrift trusts, as recognized by state law, enjoyed under the old Bankruptcy Act". *Id.* at 1271. In reaching this conclusion, the Court stated: "Pension benefits are specifically treated under the Code's exemption provision, clearly indicating that they were intended and assumed to be part of the estate". *Id.* at 1272.

This Court construes *Graham* to hold the "ERISA pension plans may not be excluded under § 541(c)(2) merely because they are ERISA pension plans". *In re Boon*, 108 B.R. 697, 702 (W.D.Mo.1989). Thus, in order for the Debtor's interests in the ERISA plans to be excluded from the estate, the plans must be valid spendthrift trusts under Missouri law.

### A. Spendthrift Trusts

Missouri recognizes spendthrift trust provisions as valid and enforceable. *In re Schmitt*, 113 B.R. 1007, 1011 (Bankr. W.D.Mo.1990). Mo.Rev.Stat. § 456.080 sets out the statutory requirements to have a valid spendthrift trust.[1] The Missouri courts define a spendthrift trust as—

[O]ne created for the support and maintenance of the beneficiary, and designed and intended by its creator to secure the trust fund or trust estate against the improvidence or incapacity of the beneficiary by protecting the same against his

---

1. Mo.Rev.Stat. § 456.080 provides: (1) All restraints upon the right of the cestui que trust to alienate or anticipate the income of any trust estate in the form of a spendthrift trust, or otherwise, and all attempts to withdraw said income of any trust estate from the claims of creditors of the cestui que trust, whether said restraints be by will or deed, now existing or in force, or, which may be hereafter executed in this state, be and the same are hereby declared null and void and of no effect, as against the claims of any wife, child or children, of said cestui que trust for support and maintenance.

(2). The settlor may provide in the terms of the trust that the interest of the beneficiary may not be either voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the trustee.

(3). A provision restraining the voluntary or involuntary transfer of beneficial interests in a

trust will prevent the settlor's creditors from satisfying claims from the trust assets except:

(1) Where the conveyance of assets to the trust was intended to hinder, delay, or defraud creditors or purchasers, pursuant to § 428.020, R.S.Mo.; or

(2) To the extent of the settlor's beneficial interest in the trust assets, if at the time the trust was established or amended:

(a) The settlor was the sole beneficiary of either the income or principal of the trust or retained the power to revoke or amend the trust; or

(b) The settlor was one of a class of beneficiaries and retained a right to receive a specific portion of the income or principal of the trust that was determinable solely from the provisions of the trust instrument.

creditors and rendering it inalienable by him before payment or termination according to the terms and conditions of the trust. *Schmitt* at 1011 quoting *Gentemann v. Dyer,* 140 S.W.2d 75, 78 (Mo. App.1940).

The Court may declare a trust unenforceable even though it includes spendthrift provisions if:

(1) The settlor of the trust is also the beneficiary of the trust;

(2) The beneficiary has dominion or control over the trust;

(3) The beneficiary may revoke the trust; or

(4) The beneficiary has powers in the trust.

*Schmitt* at 1011; *In re Gallagher,* 101 B.R. 594, 600 (Bankr.W.D.Mo.1989) citing *In re Swanson,* 873 F.2d 1121 (8th.Cir.1989). "In addition, the spendthrift provision will not be upheld if the Court finds that enforcement violates public policy". *Schmitt,* at 1011 citing *Electrical Workers, Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund,* 583 S.W.2d 154, 157 (Mo.1979).

The Court will first determine whether the Debtor's interest in the ESOP is a valid spendthrift trust under state law, and then it will determine whether the Profit Sharing Plan is a valid spendthrift trust under state law, thus allowing either or both plans to be excluded from the estate under § 541(c)(2).

### 1. ESOP Plan

█ The ESOP plan contains the following relevant provisions. First, the trust contains an anti-alienation provision as required by ERISA. (Section 13). Second, each employee automatically is a participant in the ESOP. (Section 5.1). Third, employees are prohibited from making contributions to the plan. (Section 6.1). Fourth, the trustee maintains an individual account for each participant which reflects employer contributions, and forfeitures. (Section 7.1). Fifth, under Section 11.2, the Debtor's interest in the ESOP is 100% vested. Finally, the ESOP allows the partici-

pants to vote the shares credited to their account. (Section 10.1).

█ The first step in determining whether the ESOP is a valid spendthrift trust is to identify the settlor of the trust. Here, the Debtor's only action was to accept employment with UMB. UMB made all of the contributions to the ESOP and the Debtor is expressly prohibited from making contributions. The Debtor's mere act of accepting a job which provides for the participation in the ESOP plan does not make the Debtor the settlor of the plan. *In re Boon,* 108 B.R. 697, 708 (W.D.Mo.1989). Thus, the Court finds that UMB is the settlor of the ESOP and the Debtor is the beneficiary.

█ The second step of the analysis is to determine whether the Debtor has dominion and control over the ESOP. If the beneficiary can exercise control over the trust proceeds, the spendthrift trust is invalid. *In re Swanson,* 873 F.2d 1121, 1124 (8th Cir.1989). The Court finds that the Debtor has sufficient dominion and control over the trust to render the ESOP an invalid spendthrift trust for the following reasons.

First, the Debtor is entitled to vote the shares credited to her account in the ESOP. Second, the Debtor is entitled to receive a lump sum payment from the ESOP upon the termination of her employment with UMB. "While this is a very limited right of control over the funds, the ability of the beneficiary to control trust assets in any way is inimical to the policies underlying spendthrift trusts". *Swanson* at 1124. Because the ESOP is not a valid spendthrift trust under state law, the ESOP is property of the estate. No further analysis is needed.

### 2. Profit Sharing and Savings Plan

█ The Profit Sharing and Savings Plan contains the following relevant provisions. First, the purpose of the Profit Sharing and Savings Plan is to share profits with eligible participating employees and to encourage employee savings. (Profit Sharing Preamble). Second, participants are allowed to make voluntary contribu-

tions to the plan. (Art. 6). Third, the participant has a choice of investments. (Art. 7). Fourth, benefits are payable in a lump sum upon termination of employment. (Art. 10). Fifth, the plan permits emergency loans when the Administrative Committee in its sole discretion directs the trustee to make a loan to the participant. (Art. 11). To date, the Debtor has received two emergency loans from the plan. Sixth, the participants are allowed to make withdrawals from the plan. (Art. 11). Finally, the plan contains an anti-assignment provision as required by ERISA. (Art. 12).

■ Once again, the first step of the analysis is to determine the settlor of the trust. If the beneficiary has the option of making contributions to the plan, it cannot be a spendthrift trust because it gives the beneficiary the power to be a settlor of the trust. *In re Gallagher*, 101 B.R. 594, 601 (Bankr.W.D.Mo.1989). In this case, the Debtor is allowed to make contributions to the plan. As such, the Debtor is considered to be a settlor of the plan. This, the Profit Sharing Plan fails the first step in the analysis.

In addition, the plan also fails the second step of the analysis. The plan allows the Debtor to make withdrawals and receive loans. Thus, it fails the second step of the analysis because the Debtor has dominion and control over the trust. No further analysis is needed. In conclusion, the plan is an invalid spendthrift trust. The question now becomes whether the debtor can protect the funds under state exemption law as income reasonably necessary for her support.

### B. Reasonably Necessary For the Debtor's Support (Exempt)

■ Even though the plans are part of the estate, the Debtor can still exempt out these interests if they are reasonably necessary for her maintenance and support under Mo.Rev.Stat. § 513.430(10)(e).[2] That statute provides:

§ 513.430 The following property shall be exempt from attachment and execution to the extent of any person's interest therein . . .

(10) . . . [s]uch person's right to receive . . .

(e) A payment under a stock bonus, pension, profit sharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person unless:

a. Such plan or contract was established by or under the auspices of an insider that employed such person at the time such person's rights under such plan or contract arose;

b. Such payment is on account of age or length of service; and

c. Such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(a), 403(b), 408 or 409) . . .

■ Next, the Court must address whether the Debtor's interests in the Profit Sharing Plan and ESOP Plan are reasonably necessary for the Debtor's maintenance and support and, therefore, exempt under Mo.Rev.Stat. § 513.430(10)(e). The following factors are helpful in determining whether the proceeds from the plans are reasonably necessary for the Debtor's maintenance and support:

(1) Debtor's present and anticipated living expenses;

(2) Debtor's present and anticipated income from all sources;

(3) Age of Debtor and dependents;

(4) Health of the debtor and dependents;

(5) Debtor's ability to work and earn a living;

(6) Debtor's job skills, training, and education;

(7) Debtor's other assets, including exempt assets;

---

**2.** This court follows *In re Vickers,* 116 B.R. 149, 150 (Bankr.W.D.Mo.1990) (Federman, J.) which held that ERISA does not preempt the Missouri statute which allows the debtor to claim certain

benefits as exempt to the extent that they are reasonably necessary for the support of the debtor and his dependents.

(8) Liquidity of other assets;

(9) Debtor's ability to save for retirement;

(10) Special needs of the debtor and dependents;

(11) Debtor's financial obligations, e.g., *In re Flygstad*, 56 B.R. 884 (Bankr.N.D. Iowa 1986).

After applying the above factors to the Debtor's situation, this Court concludes that the Debtor's interests in the Profit Sharing Plan and ESOP Plan are not reasonably necessary for the Debtor's maintenance and support for the following reasons.

First, the Debtor has disposable income of $791.00 per month after expenses. The Debtor can expend some of this towards a retirement plan. Since the Debtor is 53 years old and in good health, the Debtor will be able to save substantial sums over the next 12 years particularly with interest compounding. Thus, the Debtor has the ability to save for retirement.

Second, the Trustee has conceded that the Debtor's interest in her UMB Employee Retirement Plan is not part of the estate. This alone guarantees that the Debtor will have at least $587.00 per month in retirement income plus Social Security. In addition, the Debtor's husband has a retirement plan which is not part of the Estate. Even without the ESOP and Profit Sharing Plans, the Debtor has a guaranteed retirement income of $587.00 per month from her UMB Retirement Plan. Her other retirement income includes Social Security and her husband's retirement plan. Finally, Debtor apparently will remain employed at UMB and her accumulations in the plans at said bank should be considerable in the next 12 years.

### III. Conclusion

The Court concludes that the ESOP and Profit Sharing Plans are includible in the bankruptcy estate; are not excludible under 11 U.S.C. § 541(c)(2); are not spendthrift trusts; are not reasonably necessary for the support of Senora Davis or her dependents.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.