**In re Richard L. ENFIELD & Janice D. Enfield, Debtors.**

**Bankruptcy No. 91–42077–2.**

United States Bankruptcy Court, W.D. Missouri.

Nov. 13, 1991.

Gary D. Barnes, Kansas City, Mo., Trustee.

James H. Thompson, Jr., North Kansas City, Mo., for debtors.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

This case comes before the Court on the Trustee's objection to debtors' claimed exemptions in their retirement plans. At issue are Mr. Enfield's interest in The Employees' Retirement System of Kansas City, Missouri and Ms. Enfield's interest in the Civil Service Retirement System, Federal Employees Retirement System and Thrift Savings Plan.

## FACTS

Debtors filed a voluntary joint petition for relief under Chapter 7 of the Bankruptcy Code on June 24, 1991. Mr. Enfield is employed as an administrative officer for the Parks and Recreation Department of Kansas City, Missouri. Ms. Enfield is employed as a clerk for the U.S. Postal Service in Kansas City.

Mr. Enfield is a member of The Employees' Retirement System. The plan is a defined benefit plan established by city ordinance for the benefit of employees of the City of Kansas City, Missouri. Participation in the system is a mandatory condition of employment with the city for full time permanent employees. Employees contribute 5% of their salary to the system and then investment earnings and the city contribution are added to the employee contribution to fund the defined benefit. The employee has no control over or access to his pension fund except upon termination of employment, disability, or retirement. The most access an employee has to his pension funds is that upon termination of employment, he may elect to receive the full amount of his contributions to the fund. Otherwise, he will receive a defined benefit upon retirement or disability. As of August 11, 1991, the value of Mr. Enfield's vested balance in the pension system totaled $16,566.96.

Ms. Enfield was a member of the Civil Service Retirement System (CSRS) from the date of her employment with the Postal Service in 1980 until 1988 when she exercised her option to change her enrollment from CSRS to the new Federal Employees Retirement System (FERS). From that time to the present, she has been a member of FERS. The value of her contributions to her CSRS account total $10,834.76. The record does not indicate the total of her contributions to her FERS account. Both systems operate similarly in that the employee contributes a fixed percentage of salary to the fund and becomes eligible for a defined benefit upon disability or retirement based on years of service and salary level. Upon termination of employment, the employee may elect to receive a refund of his or her contributions to the fund or, under certain circumstances, may be eligible for a deferred annuity.

In addition to her membership in CSRS and FERS, Ms. Enfield is also a participant in the Thrift Savings Plan (TSP). All FERS members participate in the TSP. TSP is a supplemental retirement savings plan similar to previously popular IRA's which allows federal employees to save for retirement on a tax deferred basis. At minimum, the employing agency contributes an amount equal to 1% of the employee's salary to the employee's TSP account. The employee may deposit up to 10% of salary into the fund and, if the employee does choose to make deposits, the agency matches the employee contribution according to a matching formula that may result in a total agency contribution of 5% to the employee's account. The 1% agency contribution is automatic, but the employee contribution is wholly voluntary with the agency matching contribution wholly dependent on the employee's voluntary contribution. Again the record is not clear as to the value of the vested portion of Ms. Enfield's contribution to TSP.

## DISCUSSION

### a. *Controlling Law*

Although there is considerable disagreement among the circuits as to the treatment of pension benefits under the Bankruptcy Code generally, this Court is bound by and will follow the law of the 8th Circuit as announced and applied in the cases of *Samore v. Graham (In re Graham)*, 726 F.2d 1268 (8th Cir.1984) and *Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121 (8th Cir.1989).

Those cases mandate that the Court first determine whether the debtor's interest in the pension funds becomes part of the estate under Section 541(a) or is excluded from the estate under Section 541(c)(2). If the pension plan is included in the estate under Section 541, then this Court must determine if the debtor is entitled to an exemption under Section 522 for all or part of his interest in the pension plan.

Section 541(a)(1) provides in relevant part that, "[e]xcept as provided in subsections (b) and (c)(2)," commencement of a case under the Bankruptcy Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. Section 541(a)(1) (1988). It is beyond question that a beneficial interest in a pension system is an equitable interest of the debtor in property. But Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under [title 11]." Under *Graham* this provision operates to exclude a pension plan from the bankruptcy estate only if it qualifies as a traditional spendthrift trust under state law. *Graham* 726 F.2d at 1271; *Swanson* 873 F.2d at 1123; also see *Boon v. Minor (In re Boon)*, 108 B.R. 697, 705–706 (W.D.Mo.1989).

The first order of business is to determine the status of spendthrift trusts under the law of Missouri. Spendthrift trusts traditionally have been set up by individuals for the support of an improvident or financially unsophisticated family member. They generally prohibit alienation of trust assets by the beneficiary and also put the trust assets beyond the reach of creditors by including a clause which prohibits attachment or garnishment. "Spendthrift provisions in trusts are clearly valid in Missouri, and such provisions may preclude creditors from seizing the interests of the beneficiaries of these trusts." *Electrical Workers, Local No. 1 Credit Union v. IBEW–NECA Holiday Trust Fund*, 583 S.W.2d 154, 157 (Mo.1979) (En Banc). The traditional common law recognition of spendthrift trusts has been committed to statute. Mo.Rev.Stat. Section 456.080.

Under Missouri statute, spendthrift provisions in a trust instrument are *un* enforceable

[t]o the extent of the settlor's beneficial interest in the trust assets, if at the time the trust was established or amended ... [t]he settlor was the sole beneficiary of either the income or principal of the trust

or retained the power to revoke or amend the trust; or [t]he settlor was one of a class of beneficiaries and retained a right to receive a specific portion of the income or principal of the trust that was determinable solely from the provisions of the trust instrument.

Mo.Rev.Stat. Section 456.080.3(2). That provision simply codifies the traditional prohibition against extending spendthrift protection to a trust beneficiary who is also the settlor of the trust. Certainly, it is inequitable to allow an individual to put his assets beyond reach of creditors through the simple expedient of creating a spendthrift trust. Thus, it has often been held that the right of voluntary contribution to a retirement fund violates the rule against self-settled trusts. *Riske v. Gaylord Container Corporation (In re Brown)*, 130 B.R. 304, 309 (Bankr.E.D.Mo.1991); *In re Davis*, 125 B.R. 242, 246 (Bankr.W.D.Mo. 1991); *Federman v. Gallagher (In re Gallagher)*, 101 B.R. 594, 600 (Bankr. W.D.Mo.1989); *Blackwell v. Wallace (In re Wallace)*, 66 B.R. 834, 841 (Bankr.E.D.Mo. 1986).

■ Although the statute addresses the subject of a self-settled trust, it is silent as to the effect of an anti-alienation clause on a trust which is not self-settled, but which allows the beneficiary to exercise control over the trust corpus. The decisional law in Missouri, however, is clear that "the cestui que trust ... 'must ... have no right to possession'" of the trust assets. *Jamison v. Mississippi Valley Trust Co.*, 207 S.W. 788, 789 (Mo.1918) (quoting *Kessner v. Phillips*, 189 Mo. 515, 88 S.W. 66, 68 (1905)). Consequently, any claim that a retirement fund is a spendthrift trust is defeated where the employee is entitled to even a small degree of dominion and control over the funds in his retirement account, such as the right to direct the manner in which trust funds are invested, the right to elect the manner in which benefits are paid out, or the right to elect to receive a refund of contributions upon termination of employment. *See In re Davis*, 125 B.R. 242, 245 (Bankr.W.D.Mo.1991); *Wear v. Green (In re Green)* 115 B.R. 1001, 1008 (Bankr.W.D.Mo.1990); *In re Schmitt*, 113

B.R. 1007, 1012 (Bankr.W.D.Mo.1990); *Berman v. Mead (In re Mead)*, 110 B.R. 434, 440 (Bankr.W.D.Mo.1990).

■ If a retirement account is not a spendthrift trust under state law, either because it is self-settled, or because the beneficiary has dominion or control over fund assets, then the fund may not be excluded from the bankruptcy estate by Section 541(c)(2).

■ Even if pension funds come into the bankruptcy estate under Section 541(a)(1), the funds still may not be used to benefit the creditors if they are exempted from the estate by Section 522. The Code allows debtors to choose either the federal exemptions listed in Section 522(d) or the exemptions allowed under the state law of the debtor's domicile unless the debtor's state has elected not to allow debtors filing bankruptcy in the state to use the federal exemptions. 11 U.S.C. Section 522(b)(1) (1988). Missouri is an "opt-out" state which has elected to deny Missouri debtors the option to use the bankruptcy-specific federal exemptions in Section 522(d). The Missouri statute provides that

> [e]very person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the State of Missouri or under federal law, other than Title 11, United States Code, Section 522(d), and *no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, Section 522(d)*.

Mo.Rev.Stat. Section 513.427 (1986) (emphasis not in original). Even though Missouri debtors cannot make use of the federal exemptions in Section 522(d), they may still exempt

> any property that is exempt under Federal law, other than [Section 522(d)], or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition.

11 U.S.C. Section 522(b)(2)(A) (1988). Therefore, the Missouri debtor may take advantage of any exemption which is available under state, local or nonbankruptcy federal law.

■ This case is unusual because it deals exclusively with pension systems for public employees. The anti-alienation clauses that protect these pension systems from attachment or garnishment are, therefore, matters of statute or ordinance rather than clauses inserted into private pension plans. The effect of that distinction is that since the anti-alienation clauses in the public employee pension systems are statutes, public employees are much more likely to be able to exempt their pension benefits than private employees. These clauses will generally qualify as "Federal law, other than [Section 522(d)], or State or local law," 11 U.S.C. Section 522(b)(2)(A) (1988), so it will be rare that a public employee pension would not be exempted from the bankruptcy estate under Section 522(b)(2)(A) even if it becomes part of the estate under Section 541.

b. *The Employees' Retirement System*

The initial inquiry is whether Mr. Enfield's vested interest in The Employees' Retirement System becomes part of the bankruptcy estate under Section 541.

In The Employees' Retirement System, the pension fund assets are accumulated through a mandatory contribution of 5% of the employee's compensation. *The Charter, Administrative Code and Code of General Ordinances of Kansas City, Missouri* Section A9.9 (Supp.1989). In addition, the beneficiary is entitled to withdraw the full amount of his contributions and interest upon termination of his employment. *Id.* at Section A9.7. In *Swanson*, the Eighth Circuit examined a pension plan under Minnesota law and found that provisions in a pension plan which required the beneficiary to make mandatory contributions to a retirement fund and allowed the employee to withdraw the contributions upon termination of employment were "inimical to the policies underlying the spend-

thrift trust." *Swanson,* 873 F.2d at 1124. As a result, the court held that the pension plan came into the bankruptcy estate notwithstanding Section 541(c)(2). *Id.*

■ Minnesota is similar to Missouri in that it follows the traditional spendthrift trust doctrine that spendthrift provisions are not enforceable where a trust is self-settled or where the beneficiary is able to exercise dominion and control over the trust assets. Bankruptcy courts in Missouri, however, have interpreted Missouri law not to invalidate spendthrift provisions in a trust based solely on *mandatory* contributions to a retirement fund. *Riske v. Gaylord Container Corporation (In re Brown),* 130 B.R. 304, 309 (Bankr.E.D.Mo. 1991); *In re Davis,* 125 B.R. 242, 246 (Bankr.W.D.Mo.1991); *Federman v. Gallagher (In re Gallagher),* 101 B.R. 594, 600 (Bankr.W.D.Mo.1989); *Blackwell v. Wallace (In re Wallace),* 66 B.R. 834, 841 (Bankr.E.D.Mo.1986). Nonetheless, the debtor's ability to receive a refund of contributions upon termination of employment does make the spendthrift provisions unenforceable in Missouri. Therefore, The Employees' Retirement System cannot be considered a spendthrift trust under Missouri law. Since The Employees' Retirement System is not a traditional spendthrift trust under state law, it is not excluded from the bankruptcy estate by Section 541(c)(2). *Swanson* 873 F.2d at 1123; *Graham,* 726 F.2d at 1271–73.

■ Since debtors' interest in The Employees' Retirement System became a part of debtors' bankruptcy estate upon the filing of debtors' petition, it is necessary to look to local law to determine whether assets of The Employees' Retirement System are exempt property. The ordinance which created the retirement plan provides that

> [t]he right of any person to a benefit accruing under the provisions of this division and to the moneys in the various funds created under this division shall not be subject to execution, garnishment, attachment, or to any other process whatsoever, and the same shall be unassignable except as in this division specifically provided.

*The Charter, Administrative Code and Code of General Ordinances of Kansas City, Missouri* Section A9.14 (Supp.1978). This local law was in effect on the date of the filing of the petition, so it is applicable to debtors' interest in The Employees' Retirement System. Consequently, as an interest which is exempt under local law, debtors' interest in The Employees' Retirement System is exempt from the bankruptcy estate under Section 522(b)(2)(A).

c. *Civil Service Retirement System (CSRS) and Federal Employees' Retirement System (FERS)*

■ CSRS and FERS retirement programs are similar in all relevant particulars, so they will be treated together for purposes of this opinion. Just as in The Employees' Retirement System, both CSRS and FERS require a mandatory contribution to the employee's retirement account, 5 U.S.C. Section 8334(a) and Section 8334(k) (1988); 5 U.S.C. Section 8422 (1988), and both allow the employee to withdraw all of their contributions to the system upon termination of employment. 5 U.S.C. Section 8342 (1988); 5 U.S.C. Section 8424 (1988). Because of the potential of gaining possession of the funds upon termination of employment, neither CSRS or FERS may be considered spendthrift trusts under Missouri law. Since they are not spendthrift trusts, they are not excluded from the bankruptcy estate by Section 541(c)(2), and the amounts contributed from Ms. Enfield's federal salary into both her CSRS and FERS accounts are part of the bankruptcy estate under Section 541(a)(1).

■ Both CSRS and FERS are creatures of federal statute. *See* 5 U.S.C. Section 8331 to 8351 (1988); 5 U.S.C. Section 8401 to 8479 (1988). Statutory provisions provide anti-alienation protection for both systems. The relevant portions of both CSRS and FERS anti-alienation clauses provide that payments made under the systems are

> not assignable, either in law or equity, ... or subject to execution levy, attachment, garnishment or other legal pro-

cess, except as otherwise may be provided by Federal laws.

5 U.S.C. Section 8346(a) and 8470(a) (1988). These provisions clearly provide a "Federal law" exemption under Section 522(b)(2)(A) which will exempt both CSRS and FERS systems from the bankruptcy estate unless the phrase "except as otherwise may be provided by Federal laws" is meant to include the Bankruptcy Code and thereby withdraw the CSRS and FERS anti-alienation protection from a debtor in bankruptcy.

But it is clear from the legislative history of Section 522(b)(2)(A) that Civil Service Retirement benefits were intended to be exempt under that section because in both House and Senate reports Civil Service Retirement benefits were listed among other federal benefit programs [1] which were intended to be included as exempt under other federal laws. S.Rep. No. 989, 95th Cong.2d Sess. (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963. Also, the phrase "except as otherwise may be provided by Federal laws," was inserted into 5 U.S.C. Section 8346(a) in 1975 by Pub.L. 94–166, so that language was already in place in Section 8346(a) at the time the above referenced reports were written. *SSA Baltimore Federal Credit Union v. Bizon*, 42 B.R. 338, 348 (D.Md.1984). In that case, Judge Kaufman addressed the legislative history of 5 U.S.C. Section 8346(a) and concluded that the language was intended to allow alienation of federal retirement benefits only when *expressly* provided for by other federal law. *Bizon* 42 B.R. at 348. Judge Kaufman's analysis is persuasive. Federal bankruptcy law is not "other Federal law" as that term is used in 5 U.S.C. Section 8346(a) and 8470(a) and does not defeat the anti-alienation protection of those sections. Accordingly, this Court finds that Ms. Enfield's contributions to the CSRS and FERS retirement systems are exempt property under Section 522(b)(2)(A).

d. *Thrift Savings Plan (TSP)*

The TSP is very different from the plans previously discussed. Whereas those plans were strictly mandatory and all of debtors' contributions to those plans resulted from required salary withholding, the TSP is primarily a voluntary program. Each employee who participates in the FERS system is also enrolled in TSP and their employer automatically contributed an amount equal to 1% of their salary into their TSP account. 5 U.S.C. Section 8432(c)(1)(A) (1988). To that extent, participation is nonvoluntary. Beyond that, however, the employee may contribute up to 10% of their salary on a tax deferred basis to their TSP account. 5 U.S.C. Section 8432(a) (1988). If the employee voluntarily contributes, the employing agency will match a portion of that contribution up to an additional 4% of the employee's salary. 5 U.S.C. Section 8432(c)(2)(A). Through this program the Federal Government offers a very strong incentive to federal employees to save for retirement. As of April 30, 1991, Ms. Enfield had contributed $6,867.30 to her TSP account; the automatic agency contribution was $1,023.13; and the agency matching contribution was $4,091.11.

 Missouri Bankruptcy Courts routinely find that voluntary contributions to a retirement plan will cause the plan to violate the rule against self-settled spendthrift trusts. *Riske v. Gaylord Container Corporation (In re Brown)*, 130 B.R. 304, 309 (Bankr.E.D.Mo.1991); *In re Davis*, 125 B.R. 242, 246 (Bankr.W.D.Mo.1991); *Federman v. Gallagher (In re Gallagher)*, 101 B.R. 594, 600 (Bankr.W.D.Mo.1989); *Blackwell v. Wallace (In re Wallace)*, 66 B.R. 834, 841 (Bankr.E.D.Mo.1986); *see also, Swanson*, 873 F.2d at 1124 (Mandatory employee contributions to retirement plan violated rule against self-settled trusts under

---

**1.** Other programs listed in the reports included: Foreign Service Retirement and Disability payments; Social Security payments; injury or death compensation payments from war risk hazards; wages of fishermen, seamen and apprentices; Longshoremen's and Harbor Workers' Compensation Act death and disability benefits; Railroad Retirement Act annuities and pensions; veterans benefits; special pensions paid to winners of the Congressional Medal of Honor; and federal homestead lands on debts contracted before issuance of the patent.

Minnesota law). But the TSP not only violates the rule against self-settled spendthrift trusts to the extent of the employee contribution, the rule is also violated with respect to the portion of the agency contribution which is given as a direct response to the employee's voluntary contribution. In this context, it is worth noting that the settlor of a trust is not always the person who conveys property into the trust; a settlor may indirectly cause a trust to be created by furnishing the consideration which causes another to create the trust. George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees*, Section 41 at 428 (rev.2d ed.1979). The rule against extending spendthrift protection to self-settled trusts applies with equal force to trusts created directly by the beneficiary and trusts where the beneficiary indirectly procures creation of the trust for his own benefit. *Id.* Section 223 at 447. In this case, Ms. Enfield has directly procured the agency matching contributions to her TSP account. Her voluntary contributions furnished the consideration necessary to induce her employing agency to make the matching contribution. Consequently, she is the settlor with respect to the agency matching contribution. Under the Missouri statute, where the settlor is "the sole beneficiary of either the income or principal of the trust" the anti-alienation clause will be ineffective. Mo.Rev.Stat. Section 456.080.-3(1). Therefore, the TSP is a self-settled trust to the extent of both voluntary employee contributions as well as the agency matching contribution.

Furthermore, the TSP violates the rule against beneficiary dominion and control over trust assets. Since Ms. Enfield has more than 5 years of service, she has 3 options with respect to her TSP fund upon termination of her employment. Although she may not receive an immediate cash settlement, she may immediately begin receiving a life annuity from the fund; she may transfer the fund to an IRA or other qualified retirement account; or she may defer payment until retirement age. 5 U.S.C. Section 8433(c) (1988). Even this amount of control is "inimical to the policies underlying the spendthrift trust."

*Swanson* 873 F.2d at 1124. These options exist with respect to the full fund including all agency and employee contributions, therefore, the rule against dominion and control is violated with respect to the entire fund, and no part of the TSP can be considered a spendthrift trust under Missouri law. Section 541(c)(2) excludes no part of the TSP, so the full amount of the fund as of June 24, 1991, becomes an asset of the bankruptcy estate under Section 541.

 Even though the TSP account comes into the bankruptcy estate, the TSP, like CSRS and FERS, is exempt property under Section 522(b)(2)(A). TSP contains an anti-alienation clause similar to CSRS and FERS and provides that "sums in the Thrift Savings Fund may not be assigned or alienated and are not subject to execution, levy, attachment, garnishment, or other legal process." 5 U.S.C. Section 8437(e)(2) (1988). The TSP anti-alienation clause is a creature of federal statute, so the TSP is clearly "property that is exempt under Federal law, other than [Section 522(d)]." 11 U.S.C. Section 522(b)(2)(A). The TSP is, therefore, exempt property.

e. *Equal Protection.*

The trustee lastly argues that the Equal Protection Clause of the United States Constitution prohibits treating public employees differently than private employees. Assuming that the Trustee's premise is correct, that this application of the Bankruptcy Code treats public employees more favorably than private employees, the Trustee has failed to make a case for an equal protection violation.

 The 14th Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." Although equal protection under the 14th Amendment is applicable only to state action, the Supreme Court has held that the 5th Amendment Due Process Clause gives equal protection from discriminatory treatment by the Federal Government. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Equal protection claims brought under the Due Pro-

cess Clause of the 5th Amendment are treated the same as those brought under the Equal Protection Clause of the 14th Amendment. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). Where social and economic legislation is challenged on equal protection grounds under the Due Process Clause of the 5th Amendment, the courts will apply the "rational basis" test. *U.S.R.R. Retirement Board v. Fritz*, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). To pass muster under the rational basis test any discriminatory treatment caused by legislation must be rationally related to legitimate governmental objectives. *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981).

■ In the case at hand, it is entirely conceivable that Congress may have wanted public employees to enjoy a greater degree of protection with respect to their pension rights in bankruptcy as an aid to recruitment and retention of employees in the public sector. This is all the justification necessary for legislation to survive constitutional scrutiny under the rational basis test. So even if the Bankruptcy Code does have the effect of discriminating in favor of public employees with respect to pension rights under the Code, such discrimination is rationally related to the legitimate governmental interest of maintaining a quality public sector workforce, and this Court cannot say that such discrimination would be unconstitutional.

## CONCLUSION

Even though all of debtors' pension system accounts became part of the bankruptcy estate upon the filing of debtors' petition under Section 541, all of the assets of those retirement accounts are exempt property under Section 522(b)(2)(A). Therefore, trustee's objection to debtors' claimed exemption of their pension system accounts is DENIED.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.