**In re Alice Beth SAWYERS & Lloyd Allen Sawyers, Debtors.**

**Bankruptcy No. 91–42103–2.**

United States Bankruptcy Court, W.D. Missouri.

Jan. 7, 1992.

Scott P. Cline, Hyatt Legal Services, Independence, Mo., for debtors.

Gary Barnes, Kansas City, Mo., trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtors, Mr. and Mrs. Sawyers, filed a voluntary joint petition for relief under chapter 7 on June 25, 1991. Mr. Sawyers is employed by W.W. Grainger, Inc. and Mrs. Sawyers is employed by the Social Security Administration. Trustee has raised objections to Debtors' claimed exemptions in Mr. Sawyers' interest in the W.W. Grainger, Inc. Employees' Profit–Sharing Trust Plan; and to Mrs. Sawyers' interest in the Federal Employees' Retirement System. Trustee's objection came on for hearing on October 25, 1991. After initially indicating that briefs would be submitted on the issues presented in the case, the parties decided not to do so, consequently, the Court will

decide the case based on the record developed in the hearing.

## FACTS

Mr. Sawyers has been employed as an order filler by W.W. Grainger, Inc. for 8 years and is 100% vested in the Profit–Sharing Trust ("PST"). The PST is a benefit provided to W.W. Grainger, Inc. employees. At the end of each year, the company deposits an amount into each eligible employee's profit-sharing account. That amount is determined by the company's profits for the year and each employee's compensation. As of January 1, 1991, the balance in Mr. Sawyers' PST account was $22,949.00. Mr. Sawyers may direct the manner in which his PST account funds are invested by choosing to invest the funds in any of 3 different investment funds; he may permanently withdraw up to 25% of his account balance for limited purposes such as home purchase or college expenses; he may take a loan of up to 25% of his account balance; he may choose to receive his account balance at retirement either as a lump-sum or in annual installments; and, upon termination of employment, he may choose to receive his account balance as a lump-sum or leave his funds in the plan until age 65.

Mrs. Sawyers is a benefits authorizer and has been employed by the Social Security Administration for 8 years. She is a member of the Federal Employees' Retirement System ("FERS"). Under the FERS system, the employee contributes a fixed percentage of salary to the fund and becomes eligible for a defined benefit upon disability or retirement based on years of service and salary level. Upon termination of employment, the employee may elect to receive a refund of his or her contributions to the fund or, under certain circumstances, may be eligible for a deferred annuity. As of the date of Debtors' petition, Mrs. Sawyers had a balance in her FERS account of $10,286.00.

## DISCUSSION

Both Mr. Sawyers' interest in his profit-sharing plan and Mrs. Sawyers' interest in retirement system became part of the bankruptcy estate upon the filing of Debtors' petition. Commencement of a case under the Bankruptcy Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). In this case, Debtors are irrevocably vested in both the PST and FERS systems. Certainly, under the all-inclusive language of § 541(a)(1), their interests in those systems are equitable interests which became part of the estate upon the filing of their bankruptcy petition.

Even though, Debtors' interests in their profit-sharing and pension systems are the type of interest which come into the estate under § 541(a)(1), if they qualified as traditional spendthrift trusts under state law, they would be excluded from the estate by § 541(c)(2). *Samore v. Graham (In re Graham)*, 726 F.2d 1268, 1271 (8th Cir.1984); *Humphrey v. Buckley (In re Swanson)*, 873 F.2d 1121, 1123 (8th Cir. 1989); *In re Enfield*, 133 B.R. 515, 519 (Bankr.W.D.Mo.1991). Section 541(c)(2) reads in pertinent part: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) (1988). However, neither the PST nor FERS qualify as traditional spendthrift trusts under Missouri law. In Missouri, a trust is not a spendthrift trust if the beneficiary may exert any control over the trust assets. *Jamison v. Mississippi Valley Trust Co.*, 207 S.W. 788 (Mo.1918). Both of these plans allow Debtors to receive their full account balances upon termination of their employment and in addition, Mr. Sawyers' profit-sharing plan allows him to withdraw some plan assets; borrow plan assets; and direct the investment of plan assets. Both plans violate the rule against allowing Debtors to exercise dominion and control over trust assets. *See In re Enfield*, 133 B.R. 515, 519–20 (Bankr.W.D.Mo.1991); *In re Davis*, 125 B.R. 242, 245 (Bankr.W.D.Mo.1991); *Wear v. Green (In re Green)*, 115 B.R. 1001, 1008 (Bankr.W.D.Mo.1990); *In re Schmitt*, 113

B.R. 1007, 1012 (Bankr.W.D.Mo.1990); *Berman v. Mead (In re Mead),* 110 B.R. 434, 440 (Bankr.W.D.Mo.1990). Accordingly, § 541(c)(2) does not operate to exclude Debtors' profit-sharing and retirement plans from the bankruptcy estate.

The next inquiry to be made is whether, even though they are part of the bankruptcy estate, the plans are exempt property.

Section 522(b) allows debtors in bankruptcy to elect either to exempt from property of the bankruptcy estate property which is listed in § 522(d) of the Bankruptcy Code or to exempt property which is exempt under federal non-bankruptcy law, state law or local law, unless the debtor's state of residence "opts out" of the federal exemption scheme. 11 U.S.C. § 522(b) (1988). Since Missouri is an "opt-out" state, which has elected not to allow Missouri residents who file bankruptcy to claim the federal bankruptcy exemptions in § 522(d), Missouri residents who file for bankruptcy relief may only claim exemptions allowed under Missouri state law, local law, and non-bankruptcy federal law. Mo.Rev.Stat. § 513.427 (1986).

As this Court previously noted in *Enfield:* "it will be rare that a public employee pension would not be exempted from the bankruptcy estate under § 522(b)(2)(A) even if it becomes part of the estate under § 541." *In re Enfield,* 133 B.R. 515, 520 (Bankr.W.D.Mo.1991). The reason is that the "anti-alienation clauses that protect these pension systems from attachment or garnishment are … matters of statute or ordinance rather than clauses inserted into private pension plans." *Id.* at 520.

■ In *Enfield,* this Court found that the Federal Employees' Retirement System was fully exempt from property of the bankruptcy estate under § 522(b)(2)(A) because 5 U.S.C. § 8470(a) provides a federal non-bankruptcy law exemption for payments made under that system.[1] *Id.* at 521–22. Accordingly Mrs. Sawyers' interest in her Federal Employees' Retirement System is exempt under § 522(b)(2)(A).

In the case of Mr. Sawyers' interest in the W.W. Grainger, Inc. Employees' Profit–Sharing Trust, Debtors argue that Mr. Sawyer's interest in his profit-sharing plan is necessary to the support of Debtors and their dependents. Because Missouri is an "opt out" state, debtors must rely on the exemptions found in Mo.Rev.Stat. § 513.-430. That section reads in relevant part:

> The following property shall be exempt from attachment and execution to the extent of any person's interest therein:
>
> .    .    .    .    .
>
> (10) Such person's right to receive:
>
> .    .    .    .    .
>
> (e) A payment under a stock bonus, pension, profit-sharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service, *to the extent reasonably necessary for the support of such person and any dependent of such person ....*

Mo.Rev.Stat. § 513.430(10)(e) (1986) (emphasis not in original). To apply the statute, the only issue the Court needs to address is whether Debtor's profit-sharing plan is reasonably necessary for his support and that of his family.

■ Typically, the courts of this district analyze eleven factors to determine whether or not a debtor's pension or profit-sharing plan is reasonably necessary for the support of the debtor and the debtor's dependents. The eleven factors are: (1) Debtor's present and anticipated living expenses; (2) Debtor's present and anticipated income from all sources; (3) Age of debtor and dependents; (4) Health of debtor and dependents; (5) Debtor's ability to work and earn a living; (6) Debtor's job skills, training, and education; (7) Debtor's

---

**1.** It is not entirely clear whether Mrs. Sawyers is covered by Civil Service Retirement System ("CSRS") or by Federal Employees Retirement System ("FERS"). The Court is proceeding under the assumption that she is covered by FERS because that is the plan which she mentioned in her testimony. Debtor's counsel, however, cites the court to the anti-alienation clause at 5 U.S.C. § 8346 which is the clause covering CSRS. It makes no difference for purposes of analysis because the plans are similar in all relevant particulars so that the result will be equally applicable regardless of which retirement system she is enrolled in.

other assets, including exempt assets; (8) Liquidity of other assets; (9) Debtor's ability to save for retirement; (10) Special needs of the debtor and dependents; and (11) Debtor's financial obligations, e.g. alimony or support payments.[2] *In re Davis,* 125 B.R. 242, 246–47 (Bankr.W.D.Mo.1991); *In re Boykin,* 118 B.R. 716, 719 (Bankr. W.D.Mo.1990); *In re Bartlett,* 67 B.R. 455, 457 (Bankr.W.D.Mo.1986).

Debtors are both 34 years of age. Being relatively young, they have a significant opportunity to do additional saving during the 25 to 30 years before Debtors will be at retirement age. Debtors and their family are in good health. They do not appear to be spending an inordinate amount on health-care related expenses as only $500.00 of their $9,500.00 outstanding unsecured debt is health-care related. Debtors have a family income in excess of $47,000. Although Debtor's reported expenses are nearly equal to income, debtor testified that when the children are out of day care, some of the $557 monthly day care expense may be used for savings. The Court is unaware of any special needs of Debtors or Debtors' family.

From the above, the Court finds that Mr. Sawyers' profit-sharing account assets are not reasonably necessary to the support of Debtors or their family. In addition, it should be noted that only about half of Mr. Sawyers' approximately $23,000 profit-sharing account balance will be required to fully satisfy Debtors' outstanding unsecured debt, so it will be unnecessary to order a turnover of the entire account balance.

## CONCLUSION

In accordance with the above discussion, Trustee's objection to Debtors' exemption of Mrs. Sawyers' interest in the Federal Employees' Retirement System is DENIED, and Trustee's objection to Debtors' exemption of Mr. Sawyers' interest in the

W.W. Grainger, Inc. Employees' Profit–Sharing Trust is SUSTAINED.

Trustee is ORDERED to obtain turnover of funds out of Mr. Sawyers' profit-sharing account from the administrator of the W.W. Grainger, Inc. Employees' Profit–Sharing Trust. Trustee shall seek turnover of an amount sufficient to settle Debtors' unsecured debts; pay the expenses of estate administration; and pay any tax liability incurred on account of early withdrawal of profit-sharing funds.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.

---

**2.** Debtors provided scant testimony having a bearing on the 11 factors at the hearing. Additionally, debtors have declined to brief this issue. The burden is upon the Debtor to claim and prove up exemptions and the nature of the exemption allowed by Mo.Rev.Stat. § 513.-430(10)(e) is such that Debtor cannot carry that burden absent presentation of evidence which speaks to the 11 factors. Therefore, the Court must rely on information provided by Debtor in his petition and at the hearing in order to analyze the factors.